## Prost *v.* Caldwell Store, Inc., Appellant.

Argued November 14, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and KEIM, JJ.

*Charles G. Sweet,* for appellant.

*Adolph L. Zeman,* with him *Robert L. Zeman,* and *Zeman and Zeman,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 8, 1963:

Mrs. Margaret Prost was injured when she slipped and fell in the terrazzo-paved entranceway to a department store in Washington, maintained and operated by Caldwell Store Incorporated. With her husband she brought a suit in trespass against the store company which brought in as additional defendants the H. Kaplan Company, general contractor, and the firm of Pastura and Popovic, subcontractors, which installed the terrazzo.

The Kaplan Company filed preliminary objections to the defendant's complaint, contending that Caldwell's claim against it, if any, could only be for breach of some contractual duty it might owe Caldwell and that, therefore, it could in no way be made answerable to the claim filed by the Prosts. The lower court sustained the preliminary objections and entered judgment in favor of Kaplan. Caldwell appealed.

The lower court held that according to the Pennsylvania Rules of Civil Procedure joinder is permissible "only in defense of plaintiff's claim and does not permit joinder so that defendant may make a claim against the additional defendant."

It is true that under Pa. R. C. P. 2252(a) the claim for liability over must relate to the cause of action declared on by the plaintiff and the original defendant may not assert a claim against an additional defendant which is entirely independent of the plaintiff's claim. This is so even though the latter claim may have arisen out of the same factual occurrence from which the plaintiff's cause of action arose. Thus, if the additional defendant's liability is to the original defendant exclusively and is based solely upon a contract between them, the additional defendant's liability does not relate to the "cause of action declared on" by the plaintiff in the original trespass complaint.

However, the decision of the court below is based on the erroneous assumption that Kaplan's liability

can arise *only* out of the contractual relationship between Kaplan and Caldwell. The court evidently overlooked or gave but scant heed to the assertion by Caldwell that Kaplan's liability extended to the plaintiff on the ground that Kaplan had negligently performed its work to the detriment of not only Caldwell but the world in general. Caldwell's complaint specifically charged, inter alia, "The additional defendants poured and caused to be poured terrazzo tile which they knew or should have known would be used by the public generally and the result of their work was to create a dangerous, slippery, unsatisfactory flooring; The additional defendants created a hazard to the public generally and especially to users of the vestibule when they negligently constructed a terrazzo tile floor of such a slippery nature; The general contractors, H. Kaplan Company and the subcontractors, Pastura & Popovic, were both guilty of faulty workmanship, the use of improper materials, and of failure to warn the public generally of the hazardous condition which they had created."

The original defendant's complaint agreed with the plaintiffs' complaint wherein the latter said that the fall of Mrs. Prost was "the result of the conditions aforesaid and the negligence of the defendant, its agents, servants, or employees in the following particulars: (a) in constructing the said entranceway and vestibule of a material with a waxy or slippery surface when they knew or should have realized it would be considerably trafficked and walked upon . . ."

The pleadings thus specifically charge that the Kaplan Company breached a noncontractual duty owed directly to Prost and that Kaplan's liability is by no means dependent upon the contract between it and Caldwell.

The lower court, in support of its decision, referred to the case of *Evans v. Otis Elevator Co.*, 403 Pa. 13, and declared that "the Supreme Court laid down the

rule that generally a party to a contract does not become liable for a breach thereof to one who is not a party thereto." This is like pointing to the fife in a musical organization and overlooking the whole symphony orchestra. The ratio decidendi of the *Otis* case was directed specifically to the opposite of the proposition asserted by the court below. Mr. Justice JONES, speaking for the entire Court in that case, said (p. 18) : "a party to a contract by the very nature of his contractual undertaking may place himself in such a position that the law will impose upon him a duty to perform his contractual undertaking in such manner that third persons—strangers to the contract—will not be injured thereby; Prosser, Torts (2nd ed. 1955), §385, pp. 514-519. It is not the contract per se which creates the duty; it is the law which imposes the duty because of the nature of the undertaking in the contract. If a person undertakes by contract to make periodic examinations and inspections of equipment, such as elevators, he should reasonably foresee that a normal and natural result of his failure to properly perform such undertaking might result in injury not only to the owner of the equipment but also third persons, including the owner's employees: Bollin v. Elevator Construction & Repair Co., 361 Pa. 7, 17, 18, 63 A. 2d 19 and cases therein cited. The orbit of Otis' duty to third persons is measured by the nature and scope of his contractual undertaking with Sperling and, if, as presently appears, Otis undertook to inspect the elevator at regular intervals, and, if the elevator was in a defective or dangerous condition discoverable by reasonable inspection, Otis would be liable to third persons regardless of any privity of contract, who might be injured by Otis' failure to properly perform its contractual undertaking of inspection . . ."

As already indicated, the Caldwell complaint specifically charged Kaplan with negligence in producing

a dangerous, slippery floor because of the negligent manner in which it poured the terrazzo tile. In the *Evans* case, the Otis Company was charged with negligent inspection of an elevator, this negligence resulting in an accident which visited serious injuries on the passenger-plaintiff. In holding the Otis Elevator Co. liable, despite its contract with the owner of the building maintaining the elevator, Justice JONES said: "Such principle finds support in reason, justice and precedent," citing at least ten cases.

In the case at bar the court below said that "Had the additional defendant left a hole or some obstruction in the flooring which caused the plaintiff . . . to fall and be injured," liability could attach against Kaplan. What is the difference in principle between a negligently formed hole through which a pedestrian falls to his injury and a negligently constructed floor to which a pedestrian falls to his injury? The only visible difference is the distance of the fall. The defect is always the same, namely, a defect in the flooring over which the pedestrian must walk. Whether Kaplan, because of defective craftsmanship, left a hole in the floor, or, whether because of incompetence or negligence, failed to put into the terrazzo the indispensable substance which would insure pedal sure-footedness, the result would be the same, the pedestrian would have fallen because of the instrumentality of Kaplan's negligence.

The appellant states that "the fall occurred long after the contract was completed and after the work was accepted by the original defendant," and argues that "A contractor should certainly not be held responsible for conditions which arise after he is out of possession or control." Such an argument, if accepted into law, would absolve a contractor from liability under the most flagrant circumstances of negligence. A bridge contractor, for instance, could stuff the piers with sawdust and plead nonliability if the bridge fell,

since his work would have been completed before the public began to use the bridge.

In *Bisson v. Kelly, Inc.*, 314 Pa. 99, a workman was injured when a piece of tile, put into place by the brick subcontractor of the job where he was employed, fell on his head. The subcontractor claimed nonliability for the accident on the basis that it had already completed its work before the accident occurred and was thus off the premises. This Court, in sustaining the verdict rendered in favor of the plaintiff, said: "The duty defendant breached was a duty imposed by law, not a duty self-imposed by contract. It is a primary *social* duty of every person to take thought and have a care lest his action result in injuries to others. This social duty *the law* recognizes and enforces, and for any injury resulting from any person's lack of elementary forethought, the law holds that person accountable. A normal human being is held to foresee those injuries which are the consequence of his acts of omission or commission which he, as a reasonable human being, should have foreseen. The question whether a person charged with negligence or negligent acts or omissions should have foreseen the injuries resulting from those acts or omissions is for the jury, if there is any credible evidence from which a reasonable conclusion can be drawn in support of the claim of neglect of duty." (Emphasis in original)

The law recognizes an obligation to society and humanity which cannot be whittled away by the lean knife of inapplicable technicality. The person who designedly or unwittingly constructs a trap which will injure innocent passersby cannot escape liability for his wrong by asserting that he has left the premises and no longer controls the injurious engine he abandoned to trusting mankind.

The proposition contended for by the additional defendant here was at one time the law of the land but

it has disappeared with the horse and buggy and the rule that a husband is authorized to beat his wife with a stick no bigger than the thickness of his finger. The illustrious Justice CARDOZO is credited with bringing about the change in the law which now holds the designers and builders of damage and destruction to a degree beyond that of mere contractual obligation. It was all well stated by Judge HIRT in the case of *Krisovich v. John Booth, Inc.*, 181 Pa. Superior Ct. 5, 9: "The opinion of Judge CARDOZO in that case [*MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050], as every lawyer knows, has become landmark in the law of negligence. No longer, when the consequences of negligence may be foreseen, does liability grow out of contract. The MacPherson case, once and for all, 'put the source of the obligation where it ought to be . . .' it 'put its source in the law.'

"Beginning with Grodstein v. McGivern, 303 Pa. 555, 154 A. 794 and consistently down to the present day, the rule of MacPherson v. Buick Motor Company has been engrafted on our law, as it has been elsewhere, in practically all other jurisdictions . . . In the MacPherson case liability was imposed on the defendant because of a defective chattel. Following the Grodstein case, supra, our Supreme Court has consistently extended the principle of the MacPherson case by imposing liability also on any person who on behalf of the possessor of *land* negligently creates an artificial condition resulting in injury to others; and this, regardless of whether the contractor has surrendered possession of the land and his work has been accepted. The present-day rule is thus stated in the Restatement, Torts, §385: 'One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others within or without the land for bodily harm caused to them by the dangerous character of the structure or condition

*after his work has been accepted by the possessor* under the same rules as those stated in §§394 to 398, 403 and 404 [which restated the principles of the *MacPherson* case] as determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others.' " (Emphasis in original)

In *Bastl v. Papale*, 142 Pa. Superior Ct. 33, a cement contractor was held liable for injury done a pedestrian who stumbled over a low obstruction negligently placed on the sidewalk by the contractor after he had completed his work. The Superior Court properly pronounced: "Even though the owner [of the premises] actually had accepted the work, the defendant still owed a 'social-legal' duty to users of the sidewalk and he was properly charged with negligence in failing to anticipate and guard against a foreseeable dangerous condition created by him."

Where a builder creates a hazard which, without the need of a prophetic telescope, proclaims potential injury to the public, he may not plead immunity from liability for resulting damage on the basis that his responsibility ceased with the insertion of the last bolt and the driving of the final nail.

In this case the Kaplan Company is charged with having constructed a pavement perilous to all feet which traversed it. Whether such a pavement actually came into being and whether, if it did, Kaplan was responsible for its lurking dangers, are questions of fact for a jury. The matters decided here are that under the pleadings in the case a noncontractual duty was owed by Kaplan to the plaintiffs, which duty was allegedly breached; the fact that this alleged breach also constituted a breach of the contract between Caldwell and Kaplan Company does not sweep away Kaplan's noncontractual responsibility; and the fact Kaplan had completed its work and was not in possession

of the premises at the time of the injury is not a bar to the prosecution of the plaintiffs' claim.

The judgment of the court below is reversed with a procedendo.

Mr. Chief Justice BELL and Mr. Justice COHEN concur in the result.