**Kampmeyer v. Cheltenham Contracting Co.**

*William L. Goldman,* for plaintiffs.

*Frederick E. Smith, Lorry W. Post* and *William M. Power,* for defendants.

*John W. Dean, 3rd* and *Sidney T. Yates,* for additional defendants.

BODLEY, J., January 21, 1970.—Plaintiffs in this action are householders who claim that their house, certain personal property contained therein, and their lawns and shrubbery have suffered damage by reason of the diversion of surface waters over their property. They assert that Sandy Run Construction Co., the developer, Cheltenham Contracting Co., the general contractor, and Thomas Durkin & Sons, Inc., the subcontractor, are responsible for their monetary losses because of the allegedly negligent fashion in which defendants installed certain roadway and drainage facilities.

Cheltenham has joined Spencer Erwin, the engineer who allegedly prepared the drainage plans for the developer and also Gerald Summerson, Township Engineer for Lower Makefield Township who allegedly approved the Erwin drainage plans. It is Cheltenham's contention that Erwin was negligent in the actual preparation of the drainage plans and that Summerson was negligent in his approval of the plans

for the township without having first properly examined and, hence, discovered the alleged defects in the plans. By reason thereof, Cheltenham avers that the alleged damage to plaintiffs' property was caused solely by the joint, or several, negligence of Erwin and Summerson.

Both additional defendants have filed preliminary objections to Cheltenham's amended complaint, and these objections, having been argued before the court en banc, are now before us for disposition. Since we find that a substantial distinction exists between the separate relationships of the two engineers to the other parties to the action, the objections of each will be considered separately.

## I. SUMMERSON

The general contractor, Cheltenham, after alleging that Erwin prepared the drainage plans in a negligent fashion, alleges as to the Township Engineer Summerson only that he failed ". . . in his duty as Township Engineer to properly examine the plans prepared by additional defendant Erwin before approving same, and [was negligent] in approving same when they were not properly designed, and did not properly provide for surface drainage."

It appears that Cheltenham's position, briefly stated, is that a township engineer, although engaged by a township to perform those duties imposed upon him by the township supervisors, nonetheless owes a duty to the public at large to properly and carefully perform his contractual duties for the township and that his breach of his duties to the township—that is to say, the negligent performance of such duties—is also a tortious act toward a member of the public who may indirectly, as in this case, be thereby affected. Alternately stated, it would appear to be Cheltenham's

position that a township engineer who fails to detect an error in engineering plans reviewed by him at the request of the township supervisors is personally liable to any member of the public who is adversely affected by the engineering error which was not created, but merely not detected, by the township engineer.

In support of this theory, it is argued that a township is not required to engage a township engineer, nor does the township code require a township engineer, once appointed, to approve a developer's subdivision plans, but rather merely that he perform such duties as the supervisors may prescribe. From all of this it is argued that Summerson, as township engineer, was, therefore, not a township official and, ergo, in the approval of the plans here in question his negligence, if any, was a breach of duty not only to the municipality but also to these plaintiffs. We do not believe, however, that the status of Summerson, whether he be called township official or merely professional employe, has any material bearing on the question before us, which is his negligence, or the absence thereof, with respect to the alleged injury done these plaintiffs.

Accepting as we must the truth of all allegations properly pleaded against Summerson, we cannot find a duty owing by him under these circumstances to plaintiffs in this action nor indeed to defendant who seeks to join him.

The Second Class Township Code of May 1, 1933, P. L. 103, art. V, sec. 585, as amended 53 PS §65585, permits a township to engage a registered professional engineer. The code, in section 586 further provides that the ". . . township engineer shall perform such duties as the township supervisors shall prescribe . . ." and then goes on to provide in a general way that all of his work shall relate to the township's engineer-

ing problems. The additional defendant Summerson, having been engaged by Lower Makefield Township to perform certain engineering duties for that township, owed to his employer the duty of performing his assigned work with that degree of care and professional competence to be expected of any professional engineer. If in the performance of his duties he had been negligent, he would be answerable in damages to his employer. And, assuming that such negligence related to engineering work, the ill performance of which foreseeably could bring about damage to a member of the public, he, as well as his municipal employer, could well be held liable to the injured party.

Here, however, we find that plaintiffs, as well as Cheltenham Contracting Co., were not within a class of persons to whom Summerson owed any duty. It must be remembered Summerson prepared no drainage plans but, as part of his duty to his employer, reviewed the plans prepared by Erwin. It would be highly unreasonable, in our judgment, to hold Summerson responsible for failing to detect any defect in the plans of another engineer (unless such defect were apparent upon the face of the plans—and this is not alleged), and it would be most unreasonable to find that Summerson was in any way negligent in not discovering that the plans ". . . were not properly designed, and did not properly provide for surface drainage" as alleged by Cheltenham. To so hold would make Summerson an insurer. To so hold would require a township engineer to completely rework another engineer's plans even to the extent, as in the case of a drainage problem, of going to the land in order to determine for himself the actual grades and contours of the land. In our mind this is not the function of a township engineer in a subdivision situation unless specifically instructed to do so by his employer.

We find no conduct alleged on the part of Summerson which falls below the standard established by law for the protection of others (the plaintiffs) from unreasonable risks, nor could Summerson be held to anticipate whatever combination of circumstances may have existed in the instant case at the time of the alleged damage. In short, we find no duty owing these plaintiffs by the township engineer, so that even were Summerson found to be negligent as to the township, which is not in issue here, he would not be answerable to plaintiffs.

The only case cited by Cheltenham in support of its proposition is distinguishable and inapposite to our problem. The case of Mountz v. Lebanon County, 45 D. & C. 2d 355 (1968), was a surface water damage action brought against the county. The court permitted the joinder of three independent contractors: the general contractor, the architect and the landscape architect, holding that, while not insurers, each was bound to perform his contractual duties with reasonable care and that in addition to the liability of each to the owner growing out of their alleged negligence, each could be held liable to the injured plaintiff inasmuch as the consequences of that negligence might have reasonably been foreseen. It is noted that the court emphasized the foreseeability test and found that plaintiffs there were within the orbit of persons to whom additional defendants owed a duty of reasonable care and that the injury complained of might reasonably have been foreseen as a consequence of the breach of that duty. Quite unlike Summerson's role in this case, additional defendants in Mountz were the actors who prepared and executed the plans from which, as a direct consequence, the injury flowed. We agree with that holding and with the words of the court found, at page 360 ". . . the orbit of an architect's or contractor's [engineer's] duty to

third persons is measured by the nature and scope of his contractual undertaking with the owner. . ."

We conclude that the preliminary objections filed on behalf of Summerson must be sustained.

## II. ERWIN

Quite a different problem exists with respect to additional defendant Erwin. It is alleged that he prepared the plans for defendant developer and that he negligently failed to make proper provision for surface drainage. It is readily seen that Erwin is an actor in this case just as were the landscape architect and the architect in the Mountz case. Accepting as true the allegation that Erwin's faulty plans failed to adequately provide for surface drainage and assuming for the moment that the construction was done in accordance with the faulty plans, we have no difficulty in finding that plaintiffs here were within a class of persons to whom Erwin owed a duty of reasonable care. The injury complained of clearly was a foreseeable consequence of a neglect to make proper provisions for surface water drainage, if that is a provable fact.

Additional defendant Erwin argues that Cheltenham's amended complaint fails to state a cause of action in that there is no privity of contract alleged among defendants and additional defendants generally, and more particularly between defendant Cheltenham and the additional defendant Erwin. However, privity is not the basis of defendant's theory of Erwin's liability but, rather, it is his alleged negligence. It is also alleged that the amended complaint fails to aver **any** relationship between defendant Cheltenham and additional defendant Erwin in violation of Pa. R. C. P. 1019. We think that the allegation in paragraph 8 to the effect that the plans were prepared **for** defendant Sandy Run Construction Co., when taken together with the identification of Cheltenham as the general

contractor for Sandy Run, the developer, in paragraph 5 of plaintiff's complaint, sufficiently spells out the alleged relationship.

If in the performance of his duty, that is to say his duty to the owner to prepare drainage and grade plans etc., Erwin was negligent, and if as a result thereby foreseeable injury was suffered by these plaintiffs, Erwin is liable to plaintiffs regardless of there being no privity of contract. It is not the contract which imposes the duty but the law itself because of the nature of the contractual undertaking and the foreseeable consequences of improper performance: Doyle v. South Pittsburgh Water Company, 414 Pa. 199, 207 (1964). The fact that the breach of a common-law duty owing these plaintiffs is founded upon Erwin's negligence, which negligence at the same time may also constitute a breach of his contract with Sandy Run, does not defeat Cheltenham's right to have Erwin's liability to plaintiffs and to it determined in this action. See Prost v. Caldwell Store, Inc., 409 Pa. 421, 429-30 (1963).

We do not agree with the suggestion made by Erwin's counsel in his brief that the case before us is identical with and controlled by the case of Bowman v. Hansel, 16 Bucks 190 (1966). The problems dealt with in that equity case were entirely dissimilar from those before us.[1]

---

[1] There is no similarity between the two cases. Bowman was an equity action brought by various property owners against the developer of a residential tract, his general contractor and engineer, as well as against a school district, a school authority and Bensalem Township. The engineer prepared plans for the development, including plans for drainage and the relocation of a natural drainage ditch. These were prepared in 1956, approved by the supervisors of the township in 1957, and construction relating thereto completed in 1958. In the meantime, the school board purchased land which abutted not only the residential development, but other acreage owned by the school authority on which a

Lastly, it is contended that the amended complaint is faulty in that there is no allegation that the actual construction work was done in accordance with the plans prepared by additional defendant Erwin. This would appear to be true, and the complaint thus fails to plead an essential link in the alleged chain which Cheltenham attempts to forge for the purpose of imposing vicarious liability upon Erwin. Although one may read into paragraphs 8 and 10 of the amended complaint, by implication, the intent to plead that the construction was performed in accordance with the plans, there is no such allegation. Perhaps the very joinder of additional defendant Erwin suggests that such was the case, but defendant Cheltenham does not make this allegation and we cannot assume that it was the fact. It is altogether possible that such an allegation cannot truthfully be made. And we deem this to be an essential averment if Erwin is to be held accountable for the alleged damage.

Assuming that the original defendants had no knowledge or reason to know of the alleged faulty drainage plans, and assuming that construction was

school had already been constructed. In connection with the construction of a new school by the school board, extensive underground drainage facilities were installed on both the school board's land and that of the authority. The surface water collected on these two school tracts and was discharged in the area of the relocated drainage ditch constructed by the builder from the engineer's plans in connection with the residential development. Plaintiffs, alleging damage to their respective properties from flooding, brought the equity action against all of the defendants demanding as to the school board and school authority that they be enjoined from using their drainage system and demanding as to the developer and engineer that the drainage ditch be enclosed so as to prevent further flooding. Our court merely said in this context that no cause of action had been pleaded as to the defendant engineer, who designed the drainage plans for the residential development and was in no way involved in the design or construction of the school board's drainage facilities.

done in strict conformity with the erroneous plans, defendant Cheltenham could well be relieved of all liability. If Cheltenham knew or should have known of the alleged errors in the plans and yet constructed in accordance therewith, it is possible that defendant Cheltenham, as well as additional defendant Erwin and perhaps others could be found jointly liable. And on the other hand, if construction did not carefully and precisely conform to the plans prepared by Erwin, it is altogether probable that he would be relieved of liability even though the plans were in error in one respect or another unless his negligence in the preparation of the plans is found to have joined with the negligence of others and thus to have been a contributing factor to the injury suffered by plaintiffs.

For these reasons, we must sustain the preliminary objections filed on behalf of Erwin with leave to defendant Cheltenham to further amend in conformity with this opinion.

### ORDER

And now, January 21, 1970, the preliminary objections of additional defendant Gerald Summerson are sustained and defendant Cheltenham's amended complaint is dismissed as to him. The preliminary objections of additional defendant Erwin are sustained with leave to defendant Cheltenham to file a further amended complaint in conformity with the views above stated within 20 days of the date of notice of the filing of this order.