**Bryant M. PATRAKA and Barbara Patraka, Plaintiffs,**

v.

**ARMCO STEEL CO. et al., Defendants.**

**Civ. No. 77–911.**

United States District Court,
M. D. Pennsylvania.

Jan. 29, 1980.

---

Edward G. D'Alessandro, D'Alessandro, Sussman, Jacovino & Dowd, Paul J. Hirsh, East Orange, N.J., and Michael J. Hudacek, Plymouth, Pa., for plaintiffs.

Henkelman, Kreder, O'Connell & Brooks, Cody H. Brooks, Scranton, Pa., for Armco Steel Co.

O'Malley, Jordan & Mullaney, Joseph L. Mullaney, Scranton, Pa., for Keystone Portland Cement Co.

Goldberg, Evans & Katzman, James W. Evans, Harrisburg, Pa., for Addy Asphalt Co., Inc.

S. Walter Foulkrod, III, Foulkrod, Peters, Frank & Wasilefski, Harrisburg, Pa., for General Crushed Stone Co.

Thomas & Thomas, Harrisburg, Pa., for Houdaille Quarry, Houdaille Materials Co., Houdaille Materials, Inc. and Houdaille Construction Co.

Kolb, Holland & Taylor, Matthew R. Sorrentino, Bethlehem, Pa., and Stamberg, Caplan & Calnan, Thomas J. Calnan, Jr., Allentown, Pa., for Coplay Cement Mfg. Co.

Charles E. Friedman, Harrisburg, Pa., for Progress Building Materials Co.

McElroy, Connell, Foley & Geiser, Newark, N.J., for Bethlehem Steel Corp.

Myers, Myers, Flower & Johnson, Edmund Myers, James D. Flower, Lemoyne, Pa., for Stroudsburg Concrete Pipe.

McNees, Wallace & Nurick, Dennis J. Harnish, Harrisburg, Pa., for Number One Contracting Corp. of Pa.

Timothy E. Foley, Scranton, Pa., for Capitol Engineering Corp.

Nogi, O'Malley & Harris, John Q. Durkin, Scranton, Pa., for Goodyear Tire & Rubber Co.

Griffith, Aponick & Musto, Joseph J. Musto, Wilkes-Barre, Pa., for Weyerhauser Leasing Corp.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

This is a diversity action for personal injuries sustained as a result of a single vehicle accident on Interstate Route 80 (I-80) in Carbon County, Pennsylvania. Plaintiffs' theory of liability is that defects in the design, composition, and construction of the subbase of the section of I-80 where the accident allegedly occurred prevented adequate subbase drainage, allowing water to be "pumped" to the roadway surface where it froze, creating the hazardous condition that purportedly caused the accident. Plaintiffs' expert, Paul J. Claffey, does not find fault with the composition or construction of the highway surface itself.

Defendant No. 1 Contracting Corporation of Pennsylvania,[1] the general contractor for that portion of I-80 along which the accident occurred, has moved for summary judgment on four separate grounds: (1) plaintiffs' joinder of No. 1 of Pennsylvania as a party defendant is barred by the Pennsylvania two-year statute of limitations for personal injury actions;[2] (2) this suit is foreclosed by the Pennsylvania twelve-year statute of limitations for actions seeking recovery of damages resulting from deficiencies in the design or construction of an improvement to real property;[3] (3) No. 1 of Pennsylvania's faithful adherence to all specifications and drawings in constructing the highway subbase insulates it from liability; and (4) plaintiffs' failure to join the Commonwealth of Pennsylvania as a defendant compels dismissal of the action. After careful consideration of the points and authorities advanced by the parties I am persuaded that No. 1 of Pennsylvania is not entitled to summary judgment on any issue that it has raised and, therefore, its motion will be denied.

## I. THE TWO-YEAR STATUTE OF LIMITATIONS

On January 12, 1976, plaintiff Bryant M. Patraka was involved in a single car accident allegedly caused by defects in the design, composition or construction of the subbase of the west-bound lanes of I-80 at or near milepost 275/78 in Carbon County, Pennsylvania. On April 21, 1977, within the applicable Pennsylvania two-year limitation period, suit to recover damages for the personal injuries sustained as a result of the accident was commenced in the United States District Court for the District of New Jersey. Initially named as one of a host of defendants who purportedly participated in the construction of the pertinent section of the interstate roadway was "No. 1 Contracting Corporation, a *New Jersey corporation*."[4] But while plaintiffs did not

---

1. Hereinafter referred to as No. 1 of Pennsylvania.

2. Pa.Stat.Ann. tit. 12, § 34 (1953) (Purdon). This statute, which governs the instant action, has been repealed. The statute of limitations for personal injury actions is now found at 42 Pa.Cons.Stat.Ann. § 5524(2) (1979) (Purdon).

3. Pa.Stat.Ann. tit. 12, §§ 65.1, et seq. (Supp. 1977) (Purdon). This statute, which governs the instant action, has been repealed and substantially reenacted at 42 Pa.Cons.Stat.Ann. § 5536 (1979) (Purdon).

4. As pretrial discovery honed plaintiffs' theory of liability, the number of defendants upon whom plaintiffs sought to impose liability was reduced. By order dated April 23, 1979, plaintiffs' motion to enter voluntary dismissal with prejudice pursuant to Rule 41(a) of the Federal Rules of Civil Procedure was granted with respect to 18 individual defendants, including No. 1 Contracting Corporation of New Jersey.

name it as a defendant, No. 1 of Pennsylvania was served on June 17, 1977 with a summons and an amended complaint. No. 1 of Pennsylvania subsequently forwarded the complaint to its insurer, who contacted a New Jersey law firm to investigate the matter.[5]

In December of 1977, this action was transferred to the Middle District of Pennsylvania. After the transfer, the insurer for No. 1 of Pennsylvania solicited present counsel to represent the corporation once the corporation had been properly named as a party-defendant. On January 9, 1978, plaintiffs moved to amend their complaint to change the designation of defendant No. 1 Contracting Corporation, a New Jersey corporation, to No. 1 Contracting Corporation, a Pennsylvania corporation. This motion was granted on February 22, 1978, and plaintiffs, on April 14, 1978, more than two years after the date of the accident, named for the first time No. 1 of Pennsylvania as a defendant.

■ No. 1 of Pennsylvania argues that plaintiffs' claims against it must be dismissed because it was not made a party-defendant until after the two-year statute of limitations for personal injury actions had expired.[6] The dispositive question is whether the amended complaint filed on April 14, 1978 should relate back to April 21, 1977, the date on which this action was instituted.

■ It is clear that the prerequisites for relation back set out in Rule 15 of the Federal Rules of Civil Procedure have been satisfied here.[7] First, the claim asserted in the amended pleading clearly arises out of the occurrence set forth in the original pleading. Second, No. 1 of Pennsylvania was notified of the institution of the action within the applicable limitations period. Third, No. 1 of Pennsylvania concedes that no prejudice has been suffered in maintaining its defense on the merits. And fourth, No. 1 of Pennsylvania knew within the period of time provided by law for commencing the action that, but for a mistake concerning the identity of the proper party, the action would have been brought against it. *See Slack v. Treadway Inn of Lake Harmony, Inc.*, 388 F.Supp. 15, 18–19 (M.D.Pa. 1974). Accordingly, the amended complaint will be deemed to relate back to April 21, 1977 and, therefore, the action against No. 1 of Pennsylvania is not time-barred by the two-year personal injury statute of limitations.[8]

## II. THE TWELVE–YEAR STATUTE OF LIMITATIONS

In 1965, the Pennsylvania General Assembly enacted legislation limiting the time in which an action may be brought against those involved in the design, planning and construction of improvements to realty. Act of December 22, 1965, P.L. 1183, Pa. Stat.Ann. tit. 12, §§ 65.1 et seq. (Supp. 1977) (Purdon) (hereinafter referred to as

5. Counsel determined that No. 1 of New Jersey was a completely separate corporate entity which had no involvement whatsoever in the construction of I–80. This information was forwarded to plaintiffs' attorneys.

6. Pa.Stat.Ann. tit. 12, § 34 (1953) (Purdon) provides in pertinent part:

Every suit hereafter brought to recover damages for injury wrongfully done to the person, in case where the injury does not result in death, must be brought within two years from the time when the injury was done and not afterwards; . . . .

No. 1 of Pennsylvania's argument assumes correctly that, under *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the applicable statute of limitations in a diversi-

ty case is that of the forum state. *See Loudenslager v. Teeple*, 466 F.2d 249 (3rd Cir. 1972).

7. Although the matter is not altogether free from doubt, *see* 6 C. Wright & A. Miller, Federal Practice and Procedure § 1503 (1971), the rule in this circuit is that federal law controls the determination of whether an amended complaint should relate back to the filing of the original pleading. *See Loudenslager v. Teeple*, 466 F.2d at 250.

8. No. 1 of Pennsylvania's argument that relation back should be denied because plaintiffs' counsel somehow acted "inequitably" by failing to give present counsel notice of its motion to amend the complaint is not persuasive and does not defeat the application of the relation back doctrine.

the Act). The Act, which is set out in toto in the margin,[9] provides in pertinent part that an action to recover damages for personal injuries arising out of a deficiency in the design, planning, supervision of construction, or construction of an improvement to real property may not be brought more than twelve years after completion of the improvement. Where, however, personal injuries attributable to a design or construction defect are suffered during the twelfth year after completion of the improvement, a personal injury action may be brought within two years after the date on which the injuries are sustained.

It is undisputed that the subbase for the section of I–80 along which the accident occurred was finished by the end of 1963; the roadway was paved in the summer of 1964; No. 1 of Pennsylvania, as general contractor, participated in both the laying of the subbase and the paving of the roadway surface; and the completion certificate for the highway project was issued sometime after October of 1964. The issue raised by No. 1 of Pennsylvania is whether the subbase of the highway is an "improvement" within the intendment of the Act. If a subbase is an "improvement", then the action is barred because the accident occurred more than twelve years after its completion and the two-year extension provided under Pa.Stat.Ann. tit. 12, § 65.2 is unavailable. If, however, the "improvement" referred to in the Act is the highway project under construction,[10] then the action is timely regardless of whether the completion date for paving the highway or the date of issue for the completion certificate is used.

█ While at least two trial court decisions have contended with the question of what is an "improvement" under the Act, see *Kaczmarek v. Mesta Machine Co.*, 324 F.Supp. 298, 301 (W.D.Pa.1971) (fifty-ton machine permanently affixed to a building

---

9. The Act of 1965 provides:
§ 65.1 Twelve years
No action (including proceedings) whether in contract, in tort or otherwise, to recover damages:
(1) For any deficiency in the design, planning, supervision or observation of construction, or construction of an improvement to real property,
(2) For injury to property, real or personal, arising out of any such deficiency,
(3) For injury to the person or for wrongful death arising out of any such deficiency, or
(4) For contribution or indemnity for damages sustained on account of any injury mentioned in clauses (2) and (3) hereof shall be brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of such improvement more than twelve years after completion of such an improvement.
§ 65.2 Injury, twelfth year after improvement completed
Notwithstanding the provisions of section [65.1], in the case of such an injury to property or the person, or such an injury causing wrongful death, which injury occurred during the twelfth year after such completion, an action in tort to recover damages for such an injury or wrongful death may be brought within two years after the date on which such injury occurred: Provided, That in the case of wrongful death, such action shall also be brought within one year of the date of death. In no event, however, may any of such actions be brought more than fourteen years after the completion of construction of such an improvement.
§ 65.3 Extending limitation periods
Nothing in this act shall be construed as extending the period prescribed by the laws of this Commonwealth for the bringing of any action.
§ 65.4 Defense by person in possession or control of improvement
The limitation prescribed by this act shall not be asserted by way of defense by any person in actual possession or the control, as owner, tenant or otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of the injury or death for which it is proposed to bring action.
§ 65.5 Definitions
As used in this act, the term "person" shall mean an individual, corporation, partnership, business trust, unincorporated organization, association, professional association or joint stock company.

10. According to the deposition of Leonard Cannavo, project engineer on construction projects for the Pennsylvania Department of Transportation, the portion of I–80 where the accident occurred has the following project number: Interstate 80–4 (514) 275. The distance of the roadway involved for the entire "project" along which the accident occurred is 5.66 miles. (Deposition of Cannavo, at 19–20).

was not an "improvement to realty"); *Fromm v. Frankhauser*, 7 Pa. D. & C.3d 560 (Lanc. County 1977) (mobile home from which wheels have been removed and which has been set upon cinder blocks is an improvement to realty), no cases have been found addressing the question of whether a distinct component of an entire construction project is by itself an "improvement." In the absence of controlling state-wide precedent, this Court's task is to predict how the Pennsylvania Supreme Court would resolve the issue. *See Keystone Aeronautics Corp. v. R. J. Ernstrom Corp.*, 499 F.2d 146, 147 (3rd Cir. 1974). In making this determination, the federal court may draw upon such sources as analogous state court decisions, state rules of statutory construction, the Restatement of the Law, treatises, law review commentaries, and "the majority rule." *See* C. Wright, Handbook of the Law of Federal Courts § 58 (3rd ed. 1976).

The Pennsylvania Supreme Court in *Wolff Chemical Co. v. Philadelphia*, 217 Pa. 215, 224, 66 A. 344, 347 (1907), recognized that "[t]he word 'improvement' is a relative term and its meaning must be ascertained from the context and the subject-matter of the instrument or writing in which it is used." Thus, although the subbase of highway may literally constitute an "improvement" to realty,[11] the court's duty here is to determine whether the legislature *intended* the subbase of a highway construction project to be an improvement from the completion of which the twelve-year limitations period would have begun running. This intent may be ascertained by viewing the circumstances under which the Act was passed, the object sought to be attained by the Act, and the consequences of the particular interpretation No. 1 of Pennsylvania would have the court make. *See* 1 Pa.Cons. Stat.Ann. § 1921 (Supp.1978) (Purdon).

Pennsylvania common law, like the common law of most states, originally insulated builders from liability to a third-party who, after a structure had been completed and accepted by the owner, sustained injuries caused by defects in the design or construction of the structure.[12] This rule of non-liability, aptly coined the "completed and accepted" rule, fixed the date on which the improvement was completed and accepted by the owner as the bright line for marking when a builder's liability to third persons terminated. *See e. g., Curtin v. Somerset,* 140 Pa. 70, 21 A. 244 (1891); *First Presbyterian Congregation v. Smith*, 163 Pa. 561, 30 A. 279 (1894).

The "completed and accepted" rule was eventually discarded as an anachronistic outgrowth of the "privity of contract" doctrine, rejected by *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050 (1916), and its progeny. The current state of the law in Pennsylvania and a majority of jurisdictions is reflected in Restatement (Second) of Torts § 385 (1965):

> One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor, under the same rules as those determining liability of one who as manufacturer or independent contractor makes a chattel for the use of others.

*See, e. g., Prost v. Caldwell Store, Inc.*, 409 Pa. 421, 187 A.2d 273 (1963); *Krisovich v. John Booth, Inc.*, 181 Pa.Super. 5, 121 A.2d 890 (1956). *Cf. Foley v. Pittsburgh–Des Moines Co.*, 363 Pa. 1, 35, 68 A.2d 517 (1949).

With the abandonment of the "completed and accepted" rule, builders were for the first time exposed to liability to third per-

---

**11.** Black's Law Dictionary defines "improvement" as "[a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacing of waste, costing labor and capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes."

**12.** For a brief discussion on the development of builders' liability for the consequences of their negligent conduct see W. Prosser, Handbook of the Law of Torts § 104 (4th ed. 1971).

sons after the owner had accepted the completed work. This potential liability extended to third–parties injured many years after the improvement had been completed and had been in use. The Act, like legislation passed in a majority of jurisdictions across the country, cuts off such liability at a point when the legislators, in their collective wisdom, believe that a builder would be unfairly prejudiced in attempting to assert a defense to charges of defective design or construction.[13]

■ Since the Act is designed to cut off the potential liability caused by the abolition of the "completed and accepted" rule, it would seem to follow that the limitations period would begin to run at or near the time the builder is exposed to the additional liability. That is, by employing the phrase "after completion of . . . an improvement," it appears that the General Assembly intended to mark the commencement of the limitations period as that point when third-parties would be exposed to any defect in design or construction. This would be when the entire improvement, and not merely a component part, is so far completed that it may be used for its intended purposes by the general public.[14]

Had the legislature intended to have the limitations period begin running at an earlier point they could have, as have other legislatures, stipulated that the period begins to run after completion of the defendant's services. Or the Act could have speci-

fied that the period begins to run from the date the defective subpart of the improvement is completed. By using instead the general term "improvement," the conclusion seems inescapable that the General Assembly was referring to the overall improvement under construction.

■ This interpretation of the term improvement is also compelled by application of two pertinent Pennsylvania rules of statutory construction: (1) "[w]ords and phrases shall be construed . . . according to their common and approved usage," 1 Pa.Cons.Stat.Ann. § 1903 (Supp.1978) (Purdon); and (2) a statute of limitations is to be read "in the light of reason and common sense." *Ayers v. Morgan*, 397 Pa. 282, 154 A.2d 788, 789 (1959). The phrase "improvement to real property" generally refers to a structure or matter affixed to the realty and not each component part, such as a foundation or subbase, a plumbing or drainage system, or a roof or roadway surface.[15] In addition, construing the term improvement to refer to the entire project under construction avoids the somewhat anomalous result of having a builder insulated from liability for defective work performed more than twelve years prior to the third-person suffering injuries where, as here, the builder's services on the project continued into the twelve year period and the purportedly defective work was subject to inspection and rejection within the twelve year period.[16] Finally, the interpretation of the

**13.** The Act withstood constitutional scrutiny in *Freezer Storage v. Armstrong Cork Co.*, 476 Pa. 270, 382 A.2d 715 (1978). For a detailed discussion of builders' statutes of limitations see *Comment–Limitation of Action Statutes for Architects and Builders–Blueprints for Non–Action*, 18 Cath.U.L.Rev. 361 (1969). It should be noted that, unlike other statutes of limitations which are predicated upon the "stale claim" theory and are designed to encourage the prompt assertion of claims once they have accrued, builders' limitations statutes erect a bar to suits even before a cause of action may have accrued. *See id.* at 378–79. *See also* Annot., 93 A.L.R.3d 1242, 1245–47 (1979).

**14.** The improvement referred to here is the 5.66 mile construction project along which the accident occurred. It does not refer to I–80 in its entirety. *See* note 10 *supra*.

**15.** Support for this interpretation may also be inferred from the reenactment of Pa.Stat.Ann. tit. 12, §§ 65.1 et seq., which is entitled "Construction *Projects*" and specifies the event starting the running of the limitations period as the completion of the *construction* of the improvement, rather than merely the completion of the improvement. *See* 42 Pa.Cons.Stat.Ann. § 5536 (1979) (Purdon).

**16.** According to the deposition testimony of Al J. Roman, Vice President and Chief Engineer for No. 1 of Pennsylvania, inspectors took core samples of the roadway after it had been paved and could have authorized deduction from the contract price if the pavement or subbase materials were found to be deficient. (Roman Deposition, p. 30)

term improvement applied here seems to comport with decisions in other jurisdictions addressing the question of when analogous limitation statutes begin to run under comparable circumstances. *See, e. g., O'Connor v. Altus*, 67 N.J. 106, 335 A.2d 545, 552 n.5 (1975); *Richards v. Union Building and Construction Corp.*, 130 N.J.Super. 127, 325 A.2d 831, 832 (1974); *Rosenthal v. Kurtz*, 62 Wis.2d 1, 213 N.W.2d 741 (1974). Accordingly, this action will not be dismissed as time–barred under Pa.Stat.Ann. tit. 12, §§ 65.1 et seq.

## III. WORK PERFORMED IN ACCORDANCE WITH SPECIFICATIONS AND DRAWINGS

■ Under Pennsylvania substantive law, an independent contractor is liable to third-parties for injuries proximately caused by the contractor's negligence. *See, e. g., Prost v. Caldwell Store, Inc.*, 409 Pa. 421, 187 A.2d 273 (1963). Where, however, the contractor establishes that he has carried out carefully the plans, specifications, and directions given him *and* that those plans, specifications and directions are not so obviously defective that a reasonable contractor would not follow them, he is relieved from responsibility.[17] *See Lobozzo v. Adam Eidemiller, Inc.*, 437 Pa. 360, 364–65, 263 A.2d 432 (1970); *Valley Forge Gardens, Inc. v. James W. Morrisey, Inc.*, 385 Pa. 477, 123 A.2d 888 (1956); *Leech v. Spera Construction Corp.*, 86 York Leg.Rec. 25, 26 (1972). *Cf. Foley v. Pittsburgh–Des Moines Co.*, 363 Pa. at 26, 68 A.2d 517 (manufacturer not relieved of liability merely because some other party is under a duty of inspection). *See generally* Restatement (Second) of Torts § 404, Comment a (1965); W. Prosser, Handbook of the Law of Torts § 104 (4th ed. 1971).

■ No. 1 of Pennsylvania has failed to establish its entitlement to this liability exemption. While it has referred to testimony indicating that highway inspectors had found its work to be in accordance with Department of Highway specifications, deposition testimony of plaintiffs' expert suggests that agents of No. 1 of Pennsylvania should reasonably have known that such specifications were inadequate for the segment of the interstate route along which the accident occurred. No. 1 of Pennsylvania, of course, is not free from liability if it blindly followed obviously defective plans. *See Leech v. Spera Construction Corp.*, 86 York Leg.Rec. at 26. Furthermore, deposition testimony of plaintiffs' expert questions whether No. 1 of Pennsylvania did indeed comply with the specifications. Clearly the issue raised by No. 1 of Pennsylvania is not amenable to summary adjudication and, therefore, its resolution must await presentation to the trier of fact.

## IV. MOTION TO JOIN THE COMMONWEALTH AS AN INDISPENSABLE PARTY

■ No. 1 of Pennsylvania argues that, since deposition testimony suggests as one of the possible causes of the accident the failure of the Commonwealth to properly maintain the pertinent segment of I–80, the Commonwealth is an indispensable party and this action should be dismissed for plaintiffs' failure to join an indispensable party. This argument carries no weight. While the Commonwealth may be jointly or alternatively liable to the plaintiffs, no extended list of authorities need be cited for the proposition that a plaintiff is under no obligation whatsoever to name as defendants all who may have contributed to or caused his injuries. *See, e. g., Stiles v. Porter Paint Co.*, 75 F.R.D. 617 (E.D.Tenn. 1976); *Powell v. Kull*, 329 F.Supp. 193 (M.D.Pa.1971). *See generally* 7 C. Wright & A. Miller, Federal Practice and Procedure § 1623 (1972). Nor must the plaintiff join a party who may be responsible for a superseding and intervening negligent act. A

---

17. No. 1 of Pennsylvania incorrectly labels this liability exemption as the "completed and accepted" rule. This exemption, however, is not based on the concept of privity of contract, as was the now discarded completed and accepted rule, but on the theory that the designer or architect rightfully assumes responsibility for the adequacy of his plans. *See* W. Prosser, Handbook of the Law of Torts § 104 (4th ed. 1971).

defendant such as No. 1 of Pennsylvania is fully able to pursue his defense of superseding or intervening cause without the joinder of the third-party as a defendant. *See Tatham v. Hoke*, 469 F.Supp. 914, 917 (W.D.N. C.1979). Accordingly, No. 1 of Pennsylvania's motion to dismiss for failure to join an indispensable party will be denied.