460 A.2d 266

**Charles W. HAWTHORNE, Sr., Administrator of the Estate of Richard Daniel Hawthorne, Deceased, Appellant,**

v.

**DRAVO CORPORATION, KEYSTONE DIVISION,**

v.

**BOROUGH OF INDUSTRY.**

Superior Court of Pennsylvania.

Argued Oct. 13, 1982.

Filed April 22, 1983.

John Albert Miller, Beaver, for appellant.

Oran W. Panner, Beaver, for Dravo, appellee.

Bernard J. McAuley, Pittsburgh, for Borough of Industry, appellee.

Before CERCONE, P.J., and WIEAND and BECK, JJ.

WIEAND, Judge:

■ Richard D. Hawthorne was drowned when the vehicle which he permitted to drift into the shallow waters of the Ohio River suddenly plunged into deep water because of dredging operations which had been conducted unexpectedly close to the river's edge. The administrator of his estate commenced an action in trespass against Dravo Corporation, which had conducted dredging operations pursuant to permit granted by the Pennsylvania Department of Environmental Resources (DER).[1] After the plaintiff's evidence had been presented, the trial court entered a compulsory

1. The action was commenced by praecipe for summons and named as defendants both Dravo Corporation and the Borough of Industry. A judgment of non pros was entered in favor of both defendants but subsequently removed as to Dravo Corporation. Thereafter, the Borough of Industry was joined as an additional defendant by Dravo Corporation on grounds that it had been negligent in failing to post signs of warning or barriers to protect citizens against dangers of dredging in the river.

nonsuit, which the court en banc refused to remove.  Plaintiff appealed.[2]  We reverse and remand.

When we review the entry of a compulsory nonsuit, this " 'Court must accept as true the facts presented by appellant, read the evidence in the light most favorable to the appellant and give the appellant the benefit of all reasonable inferences and deductions arising from such evidence. *Francioni v. Gibsonia Truck Corp.*, 472 Pa. 362, 372 A.2d 736 (1977).  When the trial court is presented with a choice between two reasonable inferences, the case must be submitted to the jury. *Paul v. Hess Bros., Inc.,* 226 Pa.Super. 92, 312 A.2d 65 (1973).' " *Lavely v. Wolota,* 253 Pa.Super. 196, 199, 384 A.2d 1298, 1300 (1978), quoting *Norton v. The City of Easton,* 249 Pa.Super. 520, 523–524, 378 A.2d 417, 419 (1977).  Accord: *McNally v. Liebowitz,* 498 Pa. 163, 170, 445 A.2d 716, 719 (1982); *Kline v. Ball,* 306 Pa.Super. 284, 285, 452 A.2d 727, 728 (1982); *Barney v. Foradas,* 305 Pa.Super. 404, 407, 451 A.2d 710, 712 (1982); *Treadway v. Ebert Motor Co.,* 292 Pa.Super. 41, 46, 436 A.2d 994, 997 (1981); *Duke and Co. v. Anderson,* 275 Pa.Super. 65, 66–67, 418 A.2d 613, 614 (1980); *Gill v. McGraw Electric Co.,* 264 Pa.Super. 368, 378, 399 A.2d 1095, 1100 (1979).

The record, when examined in the light most favorable to appellant, discloses that at or about midnight on November 11, 1974, the decedent drove a borrowed vehicle down Canton Street, in the Borough of Industry, Beaver County, to the edge of the Ohio River at a place known as Maude's Landing.  There, he, his girlfriend, Betsy Wardle, and two other passengers sat and looked at the lights on the oppo-

2.  The appeal was initially taken from the order refusing to remove the compulsory nonsuit.  Thereafter, in apparent reliance upon decisions of panels of this Court holding that an appeal would not lie from an order refusing to remove a compulsory nonsuit, appellant caused a judgment to be entered and filed an amended notice of appeal more than thirty days after the court's order.  In *Miller v. Hurst,* 302 Pa.Super. 235, 448 A.2d 614 (1982), we clarified this area of the law and held that an appeal is properly taken from the order refusing to remove a compulsory nonsuit.  Thus, appellant's appeal was properly and timely filed.  The amended notice of appeal was surplusage.

site side of the river. The night was dark and foggy, however, and Betsy made several requests that they leave. Appellant's decedent acceded to Betsy's requests and began to shift the vehicle's standard transmission into reverse. As he did so, the vehicle drifted forward a short distance and suddenly plunged into deep water. Betsy and the two additional passengers escaped by exiting the vehicle through a rear window. The vehicle came to rest on its roof in 20–25 feet of water at a distance of 10–15 feet from the shore.

The area at the end of Canton Street, known as Maude's Landing or the "public ramp," had been used for many years by area residents for launching boats, washing cars, swimming, wading and fishing. The river bottom in that vicinity had been leveled and filled with cement and slag many years before to facilitate boat launching, and a sand and gravel bar extended from the shoreline toward the middle of the river. Thus, the floor of the river had sloped gradually from the shoreline for a distance of between 30 and 50 feet. The sand bar had been covered by water varying in depth from a few inches at river's edge to a few feet further from the shore. Area residents, including the decedent and his family, had driven their cars into the shallow water at the end of Canton Street in order to wash them and had backed their boat trailers and cars into the water in order to launch boats into and retrieve boats from the Ohio River. Sometime between September 30, 1974 and November 11, 1974 the sand bar at Maude's Landing was removed by Dravo's dredging operation, and a steep drop-off into deep water was created at or near the river's edge.

Appellant contended in his complaint and at trial that Dravo had been negligent in removing the sand bar and in creating a sharp drop-off into deep water by dredging in violation of the permit which allowed its operations only at a distance of 25 feet from the shore. He also alleged that Dravo had been negligent for failing to remedy the resulting dangerous condition and for failing to warn members of the public that a concealed, dangerous condition had been

created. Paragraph 18 of the permit issued by DER provided: "this permit is only valid for channel dredging no closer than the depth of dredging but no closer than 25 feet from the channel shoreline or island shorelines at normal pool elevations." No evidence was offered concerning the depth of the dredging being conducted by Dravo. There was evidence, however, that substantial dredging had been accomplished much closer to the shoreline than twenty-five feet. The trial court concluded that this restriction on appellee's dredging operations was not intended to protect occupants of vehicles which intruded upon the waters of the river. When the decedent allowed his vehicle to enter the river, his conduct was not foreseeable; and, therefore, he was not within the orbit of care which Dravo was required to exercise in conducting dredging operations. As to the decedent, the court held, Dravo owed no duty and could not be found negligent.

The permit which had been issued to Dravo was for commercial dredging pursuant to provisions of Section 1908–A of the Administrative Code of April 9, 1929, P.L. 177, as amended, 71 P.S. § 510–8.[3] This section provided:

"The Department of Environmental Resources shall have the power and its duty shall be:

.    .    .    .    .

(3) To enter into agreements to sell, lease or otherwise dispose of any iron, coal, limestone, fire-clay, oil, gas and other minerals, except sand and gravel and minerals deposited as silt in pools created by dams, that may be found in or beneath the beds of navigable streams or

**3.** The Water Obstructions Act of June 25, 1913, P.L. 555, as amended, 32 P.S. § 681 et seq. was amended by the Act of May 6, 1937, P.L. 559 to apply to dredging. See: *Warren Sand & Gravel Co., Inc. v. Commonwealth, Department of Environmental Resources*, 20 Pa.Cmwlth. 186, 195, 341 A.2d 556, 561 (1975). Authority to enter agreements pertaining to dredging was thereby vested in the Water and Power Resources Board. However, the Act of December 3, 1970, P.L. 834, No. 275, § 20, effective January 1, 1971, 71 P.S. § 510–1, abolished the Water and Power Resources Board and transferred its powers and duties to DER. The Water Obstructions Act was repealed by the Act of October 23, 1979, P.L. 204, No. 70, § 27.

bodies of water within the Commonwealth and non-navigable streams or bodies of water where the beds thereof are owned by the Commonwealth, *on such terms and conditions as the board deems to be in the best interest of the Commonwealth....* Nothing herein contained shall authorize anyone to interfere with the free navigation of said streams or bodies of water or to undermine the bed thereof or to interfere with the rights of any person or persons holding property on the banks thereof."

Under the authority of this statute, DER was permitted to impose conditions, such as precluding dredging within an established distance from shore, for the purpose of preserving the integrity of land and improvements along the river and also to protect the safety of persons who might enter the water.[4]  See: *DER v. Warren Sand & Gravel Co., Inc.*, 62 D & C 2d 679 (Environmental Resources Board, 1973), *aff'd*, 20 Pa.Cmwlth. 186, 341 A.2d 556 (1975).

■  " '[A] party to a contract by the very nature of his contractual undertaking may place himself in such a position that the law will impose upon him a duty to perform his contractual undertaking in such manner that third persons—strangers to the contract—will not be injured thereby; Prosser, Torts (2nd ed. 1955), § 385, pp. 514–519.  It is not the contract per se which creates the duty; it is the law which imposes the duty because of the nature of the undertaking in the contract.' "  *Prost v. Caldwell Store, Inc.*, 409 Pa. 421, 425, 187 A.2d 273, 275 (1963) quoting *Evans v. Otis Elevator Co.*, 403 Pa. 13, 18, 168 A.2d 573, 575 (1961). Accord: *Doyle v. South Pittsburgh Water Company*, 414 Pa. 199, 207, 199 A.2d 875, 880 (1964); *St. Clair v. B & L Paving Co.*, 270 Pa.Super. 277, 279, 411 A.2d 525, 526 (1979); *Printed Terry Finishing Company, Inc. v. City of Lebanon*, 247 Pa.Super. 277, 290, 372 A.2d 460, 466–467

---

**4.** Current Pennsylvania Code regulations for commercial dredging provide:

"Dredging shall not occur within a distance of the channel or island shoreline at normal pool less than the depth of the dredging, but in no event, less than 50 feet."  25 Pa.C. § 105.381(c).

(1977). So, Dravo had a duty, unconnected with its contract, to exercise reasonable care to avoid subjecting persons who were not parties to the contract to an unreasonable risk of harm.

" 'A normal human being is held to foresee those injuries which are the consequence of his acts of omission or commission which he, as a reasonable human being, should have foreseen.' " *Krisovich v. John Booth, Inc.,* 181 Pa.Super. 5, 10, 121 A.2d 890, 892 (1956) quoting *Bisson v. John B. Kelly, Inc.,* 314 Pa. 99, 110, 170 A. 139, 143 (1934). " '[W]hether a person charged with negligence or negligent acts or omissions should have foreseen the injuries resulting from those acts or omissions *is for the jury, if there is any credible evidence from which a reasonable conclusion can be drawn in support of the claim of neglect of duty.*' " *Prost v. Caldwell Store, Inc., supra* 409 Pa. at 427, 187 A.2d at 276 quoting *Bisson v. John B. Kelly, Inc., supra* 314 Pa. at 110, 170 A. at 143 (emphasis supplied). Accord: *Smith v. Bell Telephone Company of Pennsylvania,* 397 Pa. 134, 138–139, 153 A.2d 477, 480 (1959); *Lavely v. Wolota, supra* 253 Pa.Super. at 202, 384 A.2d at 1302; *Printed Terry Finishing Company, Inc. v. City of Lebanon, supra* 247 Pa.Super. at 291, 372 A.2d at 467; *McNett v. Briggs,* 217 Pa.Super. 322, 327–328, 272 A.2d 202, 205 (1970).

■ The evidence in this case was sufficient to permit a finding that Dravo Corporation knew or should have known that the sand bar at the foot of Canton Street had been used widely by members of the public for various activities, including vehicular intrusions of the river. It also knew or should have known that its dredging operations had removed the sand bar and substituted a steep, sudden dropoff into deep water, a condition close to but not readily visible from the shore. This evidence included testimony by Paul Walton, Jr., a resident of Industry and a former employee of Dravo who had worked on the dredge while it was in the area of Maude's Landing, that employees of Dravo had frequently parked their cars at Maude's Landing

and had used a wooden skiff or yawl to reach the dredge. Supplies for the dredging operation, he said, were generally unloaded at Maude's Landing and transferred by boat to the dredge. He testified that when he observed that the sand bar had been removed by Dravo's dredging he requested his father to notify the Coast Guard that Dravo might be in violation of dredging regulations, and that it may have created a hazard to the community. Other witnesses testified that the sudden drop-off to the river bottom was not readily visible to persons on the shore. George A. Brown, an area resident who assisted in the rescue operations, testified that as he began to walk towards the river to wade into the water on the night of November 11, 1974, an employee of Dravo yelled from the dredge that he should watch out for the drop-off. William Tichy, a volunteer fireman who assisted in the recovery of Hawthorne's body, testified that a Dravo employee on the dredge had hollered, "Now, watch, it's deep there. There's a dropoff there." Appellant's evidence also established that several members of the community, although they had observed the dredge in the river, were unaware that the dredge had removed the sand bar at the foot of Canton Street. It was also shown that Dravo had posted neither signs nor barricades to warn members of the public that the sand bar had been removed or that a sharp drop-off into deep water had been created close to the shore. This evidence, we conclude, was sufficient to submit to a jury the nature and extent of the duty of care owed by Dravo to persons entering the water at the edge of the Ohio River. It was sufficient to require that the jury decide whether appellee had violated a duty of care owed to appellant's decedent under the circumstances of this case. See and compare: *Yoffee v. Pennsylvania Power and Light*, 385 Pa. 520, 123 A.2d 636 (1956); *Bersani v. School District of Philadelphia*, 310 Pa.Super. 1, 456 A.2d 151 (1982); *Treadway v. Ebert Motor Company, supra.*

The trial court concluded that even if there had been sufficient evidence of Dravo's negligence to require the submission of that issue to the jury, a nonsuit was never-

theless proper because the decedent had been guilty of contributory negligence as a matter of law. We must respectfully disagree.

A "decedent is presumed to have exercised due care for his safety, and a finding as a matter of law that he was contributorily negligent requires evidence so clear, direct and positive as to preclude any difference in the minds of fair and reasonable men with regard to it." *Skoda v. West Penn Power Co.*, 411 Pa. 323, 332, 191 A.2d 822, 827 (1963). " '[C]ontributory negligence may be adjudged as a matter of law only in clear cases where the facts are indisputably fixed and there can be no reasonable doubt as to the inferences properly to be drawn from them ....' *Sargeant v. Ayers*, 358 Pa. 393, 397, 57 A.2d 881, 883 (1948) (citations omitted).... 'if there is any evidence upon the consideration of which reasonable minded individuals might disagree as to whether or not the [decedent] was guilty of negligence which contributed to the accident, then the question of such contributory negligence is for the jury, not for the court, to determine ....' *Heffernan v. Rosser*, 419 Pa. 550, 555, 215 A.2d 655, 658 (1966) (citations omitted)." *Perigo v. Deegan*, 288 Pa.Super. 93, 96, 431 A.2d 303, 305 (1981). Accord: *Marinelli v. The Montour Railroad Co.*, 278 Pa.Super. 403, 417, 420 A.2d 603, 610 (1980); *Landy v. Romeo*, 274 Pa.Super. 75, 77, 417 A.2d 1260, 1261 (1979); *Weitz v. Baurkot*, 267 Pa.Super. 471, 473–474, 406 A.2d 1138, 1139 (1979); *Lavely v. Wolota*, *supra* 253 Pa.Super. at 202, 384 A.2d at 1302; *DeGregoris v. Stockwell Rubber Company, Inc.*, 235 Pa.Super. 71, 74, 340 A.2d 570, 572 (1975).

■ Appellant's evidence tended to establish that casual observation from the shore was insufficient to alert an individual to the sharp drop-off into deep water which had been created close to the shoreline. Appellee, on the other hand, contended that the decedent should have been aware of the altered condition of the river bottom because of frequent visits which he had made to Maude's Landing during the dredging operations. These operations had commenced in the area of the landing on September 30, 1974,

but there was no evidence of the date on which the sand bar had been removed. Whether the decedent, on November 11, 1974, knew or should have known that the sand bar had been removed and that a hidden danger lurked beneath the dark surface of the previously shallow waters of the river was for the jury to determine. See and compare: *McNally v. Liebowitz, supra.*

Order vacated and case remanded for a new trial.