**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| DAVID L. BROWN, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF KATHRYN A. BROWN, DECEASED | : | No. 6 WAP 2022 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court entered |
| | : | September 1, 2021 at No. 337 CD |
| v. | : | 2020, reversing the Order of the |
| | : | Court of Common Pleas of Venango |
| | : | County entered February 28, 2020 at |
| CITY OF OIL CITY | : | No. 589-2016 and remanding. |
| | : | |
| | : | ARGUED:  October 26, 2022 |
| v. | : | |
| | : | |
| | : | |
| | : | |
| FRED L. BURNS, INC. | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SCOTT AMSDELL, INDIVIDUALLY, AND MACON, INC., AND HAROLD BEST, INDIVIDUALLY, AND STRUXURES, LLC | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  HAROLD BEST, INDIVIDUALLY, STRUXURES, LLC, AND FRED L. BURNS, INC. | : | |
| | : | |
| | : | |

**OPINION**

**CHIEF JUSTICE TODD**                              **DECIDED: MAY 16, 2023**

In this appeal, our Court is asked to determine whether Section 385 of the

Restatement (Second) of Torts imposes liability on a contractor to a third party whenever

the contractor, during the course of his work for a possessor of land, creates a dangerous

condition on the land that injures the third party, even though, at the time of the injury, the contractor was no longer in possession of the land, and the possessor was aware of the dangerous condition. For the reasons that follow, we conclude, as did the Commonwealth Court below, that a contractor may be subjected to liability under Section 385 in such circumstances. Accordingly, we affirm the judgment of the Commonwealth Court.

## I. Relevant Legal Principles

As we deem it helpful in understanding the issue our Court is called upon to resolve in this appeal, we begin with the text of Section 385 of the Restatement (Second) of Torts and comment c to that section, as well as a brief discussion of the relevant caselaw from our Commonwealth's intermediate appellate courts interpreting those provisions, inasmuch as they are the primary focus of the parties' respective arguments.

Section 385, entitled, "Persons Creating Artificial Conditions on Land on Behalf of Possessor: Physical Harm Caused After Work has been Accepted," provides, in full:

> One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor, under the same rules as those determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others.

Restatement (Second) of Torts § 385 (1965). Our Court has established that Section 385 is applicable to tort cases within the jurisdiction of the courts of our Commonwealth. *Gresik v. Pa. Partners, L.P.,* 33 A.3d 594, 599 (Pa. 2011) *("Gresik II")*.

Comment c to Section 385 provides:

> A manufacturer of a chattel who puts it upon the market knowing it to be dangerous and having no reason to expect that those who use it will realize its actual condition is liable

> for physical harm caused by its use (see § 394). As the liability of a servant or an independent contractor who erects a structure upon land or otherwise changes its physical condition is determined by the same rules as those which determine the liability of a manufacturer of a chattel, it follows that such a servant or contractor who turns over the land with knowledge that his work has made it dangerous in a manner unlikely to be discovered by the possessor is subject to liability both to the possessor, and to those who come upon the land with the consent of the possessor or who are likely to be in its vicinity.

Restatement (Second) of Torts § 385, cmt. c ("comment c").

Almost three decades ago, in the case of *Gilbert v. Consolidated Rail Corp.,* 623 A.2d 873 (Pa. Cmwlth. 1993), the Commonwealth Court considered the question of whether an entity which made alterations to physical property at the direction of the property's possessor, but then surrendered the property to the possessor after the alterations had been made, could be held liable under Section 385 to a third party for injuries caused by a dangerous condition created by the alterations. In *Gilbert*, the Consolidated Rail Corporation ("Conrail") was in control of property containing its rail trackage, which surrounded a train station used by passengers of the Southeastern Pennsylvania Transit Authority ("SEPTA"). Conrail erected a track crossing on the property at the direction of SEPTA. Two years after Conrail had surrendered control of the property containing the crossing to SEPTA, an individual was killed using that crossing while trying to board a SEPTA train.

The individual's parents brought a wrongful death suit against Conrail, contending that it was liable for the death of their son because Conrail had created a dangerous condition through its defective design of the crossing. The trial court dismissed the complaint, relying on comment c to Section 385. It concluded that, under comment c, a

contractor who is out of possession of property cannot be held liable for a dangerous condition that it created on the property unless the condition is "undiscoverable or latent." *Id.* at 875.[1]  The allegedly defective design at issue required an individual using the crossing to walk through a gap in the fence separating the parking area from the train tracks and then cross both the northbound and southbound tracks on a wooden walkway, which became unusable whenever trains were using or stopped on either set of tracks. In such situations, users of the walkway would be forced to cross the tracks outside of the walkway area, which is what the decedent was doing when he was struck and killed by a train.  In the trial court's view, the design of the crossing created an "open and obvious" defect; hence, it determined that Conrail could not be held liable.  *Id.* at 874.

On appeal, a split panel of the Commonwealth Court reversed, finding the trial court's interpretation of comment c to be erroneous.  The panel majority, reading comment c in conjunction with the text of Section 385, interpreted comment c "as expanding a contractor's potential liability for a dangerous condition that it created on the property." *Id.* at 875.  Thus, under the majority's construction, "[s]ection 385 limits [a contractor's] liability to third persons, while comment (c) provides for potential liability to third persons *and* the possessor of the property when the condition may be considered a latent defect." *Id.* (emphasis added).  Accordingly, the majority held that the wrongful death suit could proceed against Conrail because it made the changes to the property on behalf of SEPTA, and, thus, under Section 385, it could be held liable for any defects in

---

[1]  As a general matter, "a latent defect is a defect which cannot be discovered by observation or inspection made with ordinary care," whereas "[a] patent defect is a defect that could have been discovered without undue effort."  4A Bruner & O'Connor Construction Law § 13:10 n.5 (citations and internal quotation marks omitted).

the crossing's design and construction. Consequently, because Conrail admitted, for purposes of the motion, that it knew or should have known that the opening in the fence and the walkway were dangerous after its employees had designed and built it, the majority found the trial court erred in determining that it was entitled to judgment as a matter of law under Section 385.

The Honorable Silvestri Silvestri dissented to the majority's construction of Section 385 and comment c, reasoning that the majority

> completely overlook[ed] the language of comment (c) which mandates that liability will only attach to Conrail if it turned over the station to SEPTA with the knowledge that its work had made it 'dangerous in a manner unlikely to be discovered *by the possessor.*' . . . The phrase 'unlikely to be discovered' implies that the condition be latent and therefore not open or obvious in order for liability to attach.

*Gilbert*, 623 A.2d at 877-78 (Silvestri, J., dissenting) (emphasis original). Because the dissent perceived the purported defects in the track crossing to be of an obvious nature, it agreed with the trial court that Conrail had no liability under Section 385.

Sixteen years later, in *Gresik v. Pa. Partners, L.P.*, 989 A.2d 344 (Pa. Super. 2009) ("*Gresik I*"), a panel of the Superior Court rejected the majority holding in *Gilbert* and adopted the reasoning of the dissent. *Gresik I* involved a negligence suit against a prior owner of a steel plant for modifications it had made to the plant that included the removal of a drawbridge which workers tending to an electric furnace would use to escape should molten steel breach the sides of the furnace. The prior owner sold the plant to a second company in this modified condition. Subsequent to the sale, one steelworker employed by the plant's new owner was killed and another sustained serious injury when an explosive rupture occurred, and they had no means of escape due to the fact that the drawbridge had been removed.

In their lawsuit, the plaintiffs — the injured steelworker and the personal representative of the deceased steelworker — alleged, *inter alia*, that the removal of the drawbridge constituted a breach of the prior owner's duty of care to third-party employees such as themselves under Section 385. The prior owner filed a motion for summary judgment, which the trial court granted based on its finding of a lack of duty under Section 353 of the Restatement (Second) of Torts (describing the liability of a vendor of property for undisclosed dangerous conditions known to the vendor).

The Superior Court sustained the trial court's entry of summary judgment, but did so by relying on comment c to Section 385. In construing the language of comment c, the Superior Court opined:

> We reach this conclusion based on the plain language of Comment (c), which, as the dissent [in *Gilbert*] noted, the majority completely overlooked. On two occasions, the comment states that the danger must be of such a nature that it is unlikely to be discovered. Liability under Section 385 is determined by the same rules defining the liability of a manufacturer of chattel. The first sentence of Comment (c) states that a manufacturer of chattel is liable when it supplies a product "knowing it to be dangerous *and having no reason to expect that those who use it will realize its actual condition.*" RESTATEMENT (SECOND) OF TORTS § 385 Comment (c) (emphasis added). . . . The comment concludes that it follows, therefore, "that a servant or contractor who turns over the land *with knowledge that his work has made it dangerous in a manner unlikely to be discovered by the possessor* is subject to liability." *Id.* Based on the foregoing, we conclude that as a precondition for establishing liability under Section 385, a plaintiff must show that the danger was one unlikely to be discovered by the possessor or those who come upon the land with the possessor's consent.

*Id.* at 350-51 (emphasis original).

The court thus decided that, because the facts showed that the employees of the mill's current owner knew of the removal of the drawbridge, and the attendant hazards

this created in the event of a furnace breach, the trial court did not err in dismissing the plaintiff's complaint based on Section 385.[2]

Our Court granted allowance of appeal from the Superior Court's decision in *Gresik I*, but we did not resolve these competing interpretations of comment c by the Commonwealth and Superior Courts, as we deemed it unnecessary given our disposition. Rather, we focused on Section 385's proviso that it applies only where a "contractor or servant of a separate possessor of land" makes alterations thereto. *Gresik II*, 33 A.3d at 600. We concluded that, because the prior owner of the steel mill performed the work of removing the drawbridge while it was in possession of the premises, and thereafter sold it to the subsequent owner in this condition, there was no time when the prior owner "could have acted as a contractor or servant." *Id.* Consequently, we upheld the Superior Court decision on that alternative basis. While thus not reaching the question of whether Section 385 only applies to latent defects, we noted, in this regard, that the Superior Court's resolution of this question "is not obvious from Section 385's plain text." *Id.*

Having set forth this foundational background, we turn now to the factual and procedural genesis of the instant appeal.

## II. Factual and Procedural History

---

[2] The Superior Court continues to employ the rationale of *Gresik I* in finding contractors liable under Section 385 for dangerous defects created by their workmanship only if the danger was unlikely to be discovered by either the possessor, or those who enter the land with the possessor's consent. *See, e.g., Longwell v. Giordano*, 57 A.3d 163 (Pa. Super. 2012) (paving contractor who created a sharp drop-off edge between the asphalt driveway it poured and the surrounding grassy area, which was alleged to have caused the plaintiff to trip and fall, owed no duty under Section 385 to the plaintiff, as the condition of the steep edge caused by its work was known to the possessor of the property, due to the fact it observed it via visual inspection after the paving project was complete).

In 1904, the Oil City Library (the "library"), a stately granite and stone edifice located in the heart of Oil City in Venango County, Pennsylvania, opened its doors to serve the residents of that city and county. During the years following its opening, the library, which is owned by Oil City, gradually acquired extensive additions to its collection of books, as well as expanded its library services to make them more widely available to the residents of northwestern Pennsylvania; thus, the library now functions as a district library center for the 14 public libraries of Venango, Clarion and Jefferson Counties, and it serves over 15,000 people annually.[3]

By 2011, due to weathering and aging, the condition of the concrete stairs leading to the entrance of the library had significantly declined. As a result, Oil City contracted with Appellants Harold Best and Struxures, LLC, to develop plans for the reconstruction of the stairs and to oversee the implementation of those design plans. The actual reconstruction work, which involved the removal of the failing stairs and the installation of wholly new concrete ones, was performed by Appellant Fred Burns, Inc., pursuant to a contract with Oil City. Best, Struxures, and Burns are collectively referred to as "Contractors."[4][5]

Contractors finished performing installation work on the stairs by the end of 2011. Trial Court Opinion, 10/25/19 at 2; however, shortly thereafter, in early 2012, Oil City began to receive reports about imperfections in the concrete surface, which also began

---

[3] *See* https://oilregionlibraries.org/locations/oil-city-library/.
[4] This factual background is derived from Appellee David Brown's amended complaint and the lower court opinions in this matter. It is presented in a light most favorable to him as the plaintiff and opponent of Contractors' motion for summary judgment. *Gresik, II*, 33 A.3d at 595 n.1.
[5] Contractors have filed a joint brief with our Court in this matter.

to degrade. *Id.* These defects were of sufficient concern to Oil City that it notified Struxures on February 28, 2012 that it considered the stairs dangerous and defective. *Brown v. City of Oil City*, 263 A.3d 338, 341 (Pa. Cmwlth. 2021) (*en banc*) (quoting Brown's Amended Complaint, 5/25/17, at ¶ 20). Subsequently, on September 12, 2013, Oil City informed Burns of what it considered to be its defective workmanship in creating the dangerous condition of the stairs. *Id.*

Between February 28, 2012 and November 23, 2015, the condition of the stairs continued to worsen; however, neither Oil City nor Contractors made any efforts to repair the stairs, or to warn the public about their dangerous condition. *Id.*

On November 23, 2015, Appellee David Brown ("Brown") and his wife Kathryn exited the library and began to walk down the concrete stairs. While doing so, Kathryn tripped on one of the deteriorated sections, which caused her to fall and strike her head, suffering a traumatic head injury. Tragically, this injury claimed her life six days later.[6] *Id.*

As a result of his wife's death, Brown, in his individual capacity and as the executor of his wife's estate, commenced a wrongful death suit. In an amended complaint filed therein, he asserted negligence claims against Oil City, as owner of the library, as well as Contractors who performed the work on the stairs pursuant to their contract with Oil City.

---

[6] Although the parties presently dispute the exact date of the completion of Contractors' work, and, indeed, whether Oil City ever actually accepted the work as satisfactory, *see* Contractors' Brief at 10; Appellee's Brief at 4-5, we need not resolve these competing contentions in order to address the question on which we granted allowance of appeal, given that all parties agree that: Oil City was in possession of the stairs from January 2012 until the date of Kathryn Brown's fall; the hazardous condition of the stairs became known to Oil City during this time period; and neither Oil City nor Contractors performed any repairs on the stairs prior to the accident.

Specifically, with respect to Contractors, he alleged they "knew or through the exercise of reasonable care should have known" that:

- "by failing to exercise reasonable care in the performance [of their] contractual obligations would create an unreasonably dangerous condition and increase the risk of harm to third parties, such as Kathryn A. Brown."

- "the dangerous condition caused by the degradation of the front steps of the [library] created an unreasonable risk of harm to individuals having need to use the steps, such as Kathryn A. Brown."

- "Kathryn A. Brown would not discover or realize the dangerous condition, or would fail to protect herself against it."

Brown's Amended Complaint, 5/25/17, at ¶¶ 49-51; 56-58.

Brown further alleged that Contractors "breached their duty to exercise reasonable care in the performance [of] their contractual obligations so as to not injure third parties, such as Kathryn Brown." *Id.* at ¶¶ 52, 59. He alleged they did so by, *inter alia*:

- "Failing to properly design steps or provide plans for the construction of the front steps of the [library] safe for the intended use;"

- "Failing to properly reconstruct the front steps of the [library] in a safe and reasonable manner;"

- "Failing to reconstruct the steps in a reasonable manner such that they would not unreasonably degrade;"

- "Fail[ing] to warn the Plaintiff of the dangerous condition;" and

- "Fail[ing] to protect the Plaintiff from the dangerous condition".

*Id.*

Oil City and Contractors joined additional defendants involved in the design and construction process, and filed cross-claims seeking indemnification from the other

defendants.

After discovery was complete, each of the Contractors filed a motion for summary judgment, which asserted the same claimed basis for relief – namely, that they owed no duty to third persons, as they were not in possession of the premises at the time the injury occurred. Brown filed a response to the motion, asserting, *inter alia*, that Contractors "had a duty to third parties, such as Kathryn Brown, and they breached that duty regardless of whether they ceased to have a possessory interest in the Stairs." Plaintiff's Response to Contractors' Motion for Summary Judgment, 7/29/19, at 7 (R.R. at 1246a). Brown identified, *inter alia*, Section 385 as the source of authority for the establishment of such a duty. *Id.*

Because each of the Contractors' motions for summary judgment raised the same issue regarding an out-of-possession contractor's duty to third parties, the trial court, by the Honorable Robert Boyer of the Court of Common Pleas of Venango County, considered the motions together, and granted them on October 25, 2019. In its opinion accompanying the order, the trial court acknowledged the divergence between the interpretations of Section 385 by the Commonwealth Court in *Gilbert* and the Superior Court in *Gresik I*. However, the trial court ultimately agreed with the Superior Court's interpretation of Section 385 in *Gresik I* as limiting a contractor's third-party liability to only those situations where the contractor created a dangerous defect that the possessor was unlikely to discover.

The trial court concluded that it could not find that Contractors "made the area of the stairs in a way that . . . Oil City was unlikely to discover." Trial Court Opinion, 10/25/19, at 7. The trial court further found that "Oil City was aware of [the] defective nature of the

stairs for years as evidenced by the meetings and letters that were sent pertaining to the poor condition of the stairs after the work was completed." *Id.* Additionally, the trial court noted that Oil City's manager, its solicitor, and the library's interim director, were all notified of the defects in the stairs after Contractors completed the reconstruction work but before Kathryn Brown's fall. *Id.* Thus, following the rationale of *Gresik I*, the trial court determined that Contractors could not be liable to the Browns as they did not violate any duty to them, and it entered summary judgment for Contractors on that basis.

Thereafter, Brown reached a settlement with Oil City for $500,000, the maximum amount of liability of a local agency such as Oil City under the damages cap contained in the Political Subdivision Tort Claims Act.[7] The trial court approved the settlement by order dated February 28, 2020.[8]

Brown appealed the order granting Contractors summary judgment to the Commonwealth Court.[9] In a unanimous published *en banc* opinion authored by President

---

[7] *See* 42 Pa.C.S. § 8553(b) ("Damages arising from the same cause of action or transaction or occurrence or series of causes of action or transactions or occurrences shall not exceed $500,000 in the aggregate.").

[8] This order did not dismiss Oil City from the case, and its counterclaims against the other defendants for indemnification, as well as those defendants' indemnification claims against it, remain pending.

[9] Contractors filed a motion to quash the appeal, asserting that the Commonwealth Court lacked jurisdiction because Oil City was not a party to the appeal given its settlement with Brown. The Commonwealth Court denied the motion, noting that, *inter alia*, under 42 Pa.C.S. § 762(a)(7), the Commonwealth Court has jurisdiction to hear appeals in all matters in which local government immunity has been asserted, even if the local government agency was not a party to the appeal before it. Before our Court, Contractors do not renew their challenge to the Commonwealth Court's jurisdiction, nor do they suggest that our Court lacks jurisdiction for that reason, although they somewhat nebulously assert that they "never conceded" that the Commonwealth Court had jurisdiction. Contractors' Brief at 18 n.3. Contractors further incorporate "by reference" the arguments they made to the Commonwealth Court challenging its jurisdiction into their brief to our Court. We have emphasized that incorporation by reference is not a

Judge Emerita Mary Hannah Leavitt, that tribunal reversed the trial court. *Brown v. City of Oil City*, 263 A.3d 338 (Pa. Cmwlth. 2021) (*en banc*).[10]

The court began its analysis by discussing our seminal case in *Prost v. Caldwell Stores*, 187 A.2d 273 (Pa. 1963), involving the liability of a contractor for harm caused to third parties by its workmanship, after the work has been accepted by the possessor. In *Prost*, contractors who had installed a terrazzo tiled entrance for a department store were sued after a customer slipped and fell on the tile. The plaintiffs alleged that the contractors were liable for their injuries due to the negligent manner in which they had installed the tile, but the contractors disclaimed liability, asserting that they could not be held liable for conditions that arose after the store accepted the work. At most, according to the contractors, their liability extended only to the department store with whom they had contracted. However, our Court rejected that argument, emphasizing that a party to a contract has a broader duty to all individuals who are not parties thereto – namely, that he perform his "contractual undertaking[s] in such manner that third persons — strangers to the contract — will not be injured thereby." *Id.* at 275 (quoting *Evans v. Otis Elevator Company*, 168 A.2d 573, 575 (Pa. 1961)). This duty, our Court concluded, was reflected in Section 385 of the Restatement (First) of Torts, which utilized virtually identical language to that presently contained in Section 385 of the Second Restatement at issue

_____

proper manner to raise an issue for our Court's consideration, *Commonwealth v. Briggs,* 12 A.3d 291, 342 (Pa. 2011), and we will not consider issues presented in this manner. Regardless, we discern no error in the Commonwealth Court's conclusion and, thus, find no impediment to our jurisdiction. *See* 42 Pa.C.S. § 724 (empowering this Court to grant discretionary review of all final orders of the Commonwealth Court).

[10] The other jurists joining the majority opinion were then-Judge, now-Justice, Kevin Brobson, then-Judge, now-President Judge, Renee Cohn Jubelirer, and Judges Patricia McCullough, Christine Fizzano Cannon, Ellen Ceisler, and J. Andrew Crompton.

herein. Our Court reasoned that the contractor who installed the tile floor had a duty to the plaintiffs not to create a hazardous condition thereby, and the fact that the contractor had finished the work and was not in possession at the time the injury occurred did not bar the plaintiffs' claims. *Prost*, 197 A.2d at 277.

The Commonwealth Court below found its decision in *Gilbert* to be consonant with *Prost*, because it recognized that Section 385 "expanded the liability of a contractor beyond the limits of its contract with the possessor of land to recognize a social duty to others for physical injuries caused by the contractor's work. . . . [T]his social duty includes third persons who are 'strangers to the contract'." *Brown*, 263 A.3d at 344 (quoting *Prost*, 187 A.2d at 275). The court characterized its *Gilbert* decision as having established the scope of that social duty by interpreting comment c as clarifying "that the third persons to whom the contractor has liability under Section 385 can include the 'possessor' of the property, but only where the defect is latent and not known to the possessor." *Id.*

The court acknowledged the split of authority between it and the Superior Court, with the Superior Court's adoption, in *Gresik I*, of the rationale of the dissenting opinion in *Gilbert*. However, the court below observed that, while it generally regards Superior Court precedent as persuasive, it was not compelled to follow such precedent where, as here, it conflicted with its own. Moreover, the court noted that, in its view, *Gresik I* was inapposite, given that our Court found in *Gresik II* that Section 385 did not apply under the facts of that case. *Id.* at 346.

Accordingly, the court applied *Gilbert* and found that the fact that Oil City had knowledge of the defective nature of the stairs did not relieve Contractors of liability under Section 385:

As we explained in *Gilbert*, Section 385 extends a contractor's liability to third persons who are injured by an artificial condition of the land created by the contractor after the possessor has accepted the completed work. Nowhere does Section 385 state that for liability to attach the artificial condition must be latent. Comment c to Section 385 of the Restatement may limit the contractor's liability to the possessor to the situation where the defect is latent. Otherwise, the possessor cannot hold the contractor liable in negligence. However, the fact that Oil City was aware of the defective nature of the library steps is irrelevant to the liability of Burns and Struxures to "others." At most, this fact may relieve them of liability to Oil City, the possessor.

*Id.* Consequently, the court held that the trial court erred in granting summary judgment to Contractors.

Contractors sought allowance of appeal, which we granted in order to consider the question of "[w]hether an out-of-possession contractor can . . . be subject to liability under Section 385 of the Restatement of Torts for injuries to third-parties where the dangerous condition of the structure erected by the contractor is well-known to the possessor of land?" *Brown v. City of Oil City*, 273 A.3d 506, 507 (Pa. 2022) (order).

## II. Arguments of the Parties

Contractors argue that the Commonwealth Court should have adopted the Superior Court's approach set forth in *Gresik I*, or the dissent in the Commonwealth Court's decision in *Gilbert*, limiting liability for an out-of-possession contractor to latent defects in the property. They contend that, instead, the Commonwealth Court, through its decision in this matter, created an arbitrary distinction between the liability of an out-of-possession contractor to the possessor of the land and his liability to third parties. In their view, the instant Commonwealth Court decision stands for the proposition that

liability of a contractor to the former is limited under comment c to Section 385, but not to the latter.

Contractors further assert that the Commonwealth Court erred in relying on *Prost* in its decision, inasmuch as that case, unlike this one, did not involve the question of an out-of-possession contractor's liability for a defect which was either known or discoverable.

Contractors submit that the Superior Court has repeatedly reaffirmed its conclusion that comment c limits the liability of an out-of-possession contractor to only defects that are unlikely to be discovered by the possessor of the land. Contractors' Brief at 34-35 (citing *Longwell*[11]). They criticize the Commonwealth Court's construction below, and the majority interpretation in *Gilbert*, that comment c *expands* Section 385 liability to possessors (in addition to the public) when a defect is latent. *Id.* at 36. They stress their view that, because the defect herein was obvious, "liability should rest solely on the possessor of land (Oil City) who knowingly chose the manner in which to address the defect," and Oil City did not involve the Contractors in this process. *Id.* at 36-37. Further, they contend that, inasmuch as Oil City had exclusive control over the property, it bore the "responsibility to decide what course of action to take with regard to the obvious defect so as not to potentially cause harm to its invitees." *Id.* at 38. Moreover, they submit that "[n]o one was permitted to do anything without the express instructions from Oil City," *id.* at 39, and that, at no time, did Oil City request Contractors to make repairs.

Additionally, Contractors offer public policy arguments as to why out-of-possession contractors should not be liable for obvious defects in property they may have created

---

[11] *See supra* note 2.

through their work. They take the position that "[t]he Commonwealth Court's decision . . . rewards property owners for failing to inspect property of which they are in possession and remedy dangerous conditions upon such property by shifting that burden upon contractors not in possession of the property." *Id.* at 40. In their view, this contravenes well established principles of premises liability which have as their objective the protection of persons entering property from dangers that are not open and obvious, given that they cannot take steps to protect themselves from the harm such dangers pose.

Moreover, Contractors claim that, under Pennsylvania law, possessors of property have an established duty to inspect their property for latent defects, so that they may find and repair them. Contractors' Brief at 41 (quoting *Argo v. Goodstein*, 265 A.2d 783, 787 (Pa. 1970) (invitee of possessor of land is entitled to expect that the possessor inspect the property to discover latent defects and to repair them, or provide appropriate safeguards or warnings against them)). They contend that requiring the possessor of land, rather than an out-of-possession contractor, to take such protective measures should be encouraged, because the possessor is in the best position to remedy defects, rather than a contractor who has had no contact with the property since completing its work.

Finally, Contractors aver that limiting an out-of-possession contractor's liability to only latent defects is consistent with the policy undergirding Section 385, due to the fact that Section 385 plainly states that the liability of a contractor is to be determined "under the same rules as those determining the liability of a manufacturer of chattels." *Id.* at 42 (quoting Section 385); *see also* Restatement (Second) Torts, cmt. a ("The rules determining the liability as one who as manufacturer or independent contractor makes a

chattel for the use of others, are stated in §§ 394-398, and §§ 403 and 404."). Contractors highlight that these rules impose requirements on a manufacturer to eliminate, safeguard against, or warn of, risks of harm to others created by their product or work which it is aware of, but which the end user of the product is not able to discover. Contractors argue that those rules do not apply to them in this instance, since, once again, the obvious defects in the stairs were, in fact, discovered by Oil City.[12]

---

[12] The Philadelphia Association of Defense Counsel ("PADC") filed an *amicus* brief on behalf of Contractors. Like Contractors, it asserts that the Commonwealth Court's ruling misallocates risks by shifting the burden for correcting patent defects in land to an out-of-possession contractor and not the landowner. In its view, this creates perverse incentives for possessors of land to do nothing, as "[s]hould a third party sustain injury, the landowner can shift liability to the contractor." PADC's Brief at 9. Indeed, PADC posits that, under the Commonwealth Court's ruling, a possessor could "*prohibit* a contractor from remedying the dangerous condition, but still have the ability to seek recompense or contribution from the contractor when a third party suffers injury." *Id.* (emphasis original).

PADC also argues that Section 385 borrows from the rules governing manufacturers of chattels, and under those rules a contractor "cannot be liable if it informs the possessor of land about the dangerous condition, or if that dangerous condition is known to the possessor of land." *Id.* at 7 (citing Restatement (Second) Torts § 388). In that vein, PADC submits that, because Section 385 establishes the same rule for contractors as for the manufacturers of products, the Commonwealth Court's decision below could be applied to eliminate the ability of a contractor who does work involving asbestos for a manufacturer to raise the sophisticated-purchaser defense in Restatement (Second) of Torts § 388, comment n, in litigation brought for harm caused by the asbestos. *Id.* at 14.

Lastly, PADC submits that the Superior Court's approach in *Gresik I*, imposing liability only for latent defects, is followed in "most other jurisdictions." *Id.* at 15. It states that courts of those jurisdictions "hold either that a known dangerous condition eliminates the contractor's legal duty or that the landowner's failure to fix it is a superseding cause of the third party's injury." *Id.* (citing cases from Alaska, *Brent v. Unicol*, 969 P.2d 627 (Alaska 1998); California, *Sanchez v. Swinerton & Walberg*, 55 Cal.Rptr.2d 415 (Cal. App.2d Dist.); Maryland, *Council of Co-Owners, Atlantis Condominium v. Whiting Turner Contracting Company*, 517 A.2d 336, 344 (Md. 1986); New Hampshire, *Russell v. Arthur Whitcomb*, 121 A.2d 781 (N.H. 1956); New Mexico, *Tipton v. Clower*, 356 P.2d 46 (N.M. 1960); New York, *Sternbach v. Cornell University*, 558 N.Y.S.2d 252 (N.Y.A.D., 3 Dept. 1990); Rhode Island, *Pastorelli v. Associated Engineers*, 176 F.Supp. 159 (Dist. R.I. 1959) and Wyoming, *Lynch v. Norton Construction*, 861 P.2d 1095 (Wyo. 1993)). By contrast, it contends only two states – Alabama, *McFadden v. Ten-T Corp.*, 529 So.2d

In response, Brown contends that the Commonwealth Court's decision in this matter correctly decided the question of the liability of an out-of-possession contractor for a patent defect it created. Brown quotes at length from our Court's decision in *Prost*, which he characterizes as setting forth the basic duty of out-of-possession contractors to third parties in its adoption of the nearly-identical Section 385 from the First Restatement, and he underscores that our Court did not therein exempt a contractor for liability merely because the defect was patent or obvious.

While conceding that neither *Prost* nor *Gresik II* addressed the relevance of the latency of the defect in determining a contractor's liability under Section 385, Brown nevertheless submits that the Commonwealth Court in the instant matter correctly found that latency is irrelevant to a Section 385 analysis. Brown avers that the Commonwealth Court correctly analyzed the language of comment c by reading its first sentence as establishing that, whenever a contractor creates a dangerous condition that an injured third party had no reason to be aware of, *i.e.*, a latent defect, the contractor is liable to that third party. Thus, in light of that fact, Brown suggests the second sentence of comment c was properly read as expanding the category of parties to whom the contractor could be liable to also include the possessor of the land. But Brown stresses that "[t]here is simply nothing in the plain text of either Section 385 or Comment (c) that preconditions the out-of-possession contractor's liability to a third-party user — who lacks knowledge of the dangerous condition created by the contractor — on the knowledge of the possessor." Appellee's Brief at 23-24. He contends that any other interpretation would "unreasonably

_____

192 (Ala. 1988), and New Jersey, *Totten v. Gruzen*, 245 A.2d 1 (N.J. 1968) – impose liability on contractors for patent defects.

and unnecessarily harm innocent third-party users to the benefit of tortfeasors contrary to the purposes of tort law," because it would deny them their right to be fully compensated for their injuries by all of the responsible tortfeasors. *Id.* at 24. This, according to Brown, would constitute an unjust financial windfall to contractors by relieving them of responsibility for damages which they caused.

Addressing Contractors' argument that the Commonwealth Court's interpretation creates an incentive for the possessor to ignore defects, and thereby escape financial responsibility for failing to repair them, Brown notes that the facts of this case belie that contention, given that Oil City settled for $500,000, the maximum of its liability under the Political Subdivision Tort Claims Act. The possessor's knowledge of the defects resulting from a contractor's work, in Brown's view, should not insulate *the contractor* from its share of the liability. Rather, it ensures that both tortfeasors – the possessor of the land and the contractor – bear their respective responsibility.

Brown contends that the lower court's interpretation does not conflict with the other Restatement sections referenced in comment a to Section 385 – Sections 393-398 and 403-404. Indeed, he notes that it is consistent with Section 396, which states: "A manufacturer of a chattel is subject to liability under the rules stated in §§ 394 and 395 although the dangerous character or condition of the chattel is discoverable by an inspection which the seller or any other person is under a duty to the person injured to make." Appellee's Brief at 28 (quoting Restatement (Second) of Torts § 396). Moreover, Brown contends that the Commonwealth Court's conclusion is buttressed by comment b to Section 396, which provides: "The fact that the inspection, if made, would have disclosed the dangerous character of the chattel . . . subjects the one who fails to perform

the duty [to correct it] to liability . . . . It does not, however, relieve from liability the manufacturer to whose negligence the dangerous condition is due." *See id.* at 29 (quoting Restatement (Second) of Torts § 396, cmt. b)).[13] [14]

---

[13] Brown responds to the assertion by *amicus* PADC that the Commonwealth Court's interpretation could somehow "deleteriously affect the sophisticated-user defense" used in asbestos litigation, which is derived from comment n to the Restatement (Second) of Torts § 388; he contends such an argument is a "red herring" not implicated by the facts of this case. Appellee's Brief at 30. Besides the fact that this is not an asbestos case, but, rather, a conventional slip and fall case, to which ordinary principles of negligence law apply, Brown points out that the sophisticated-user defense would be, in any event, inapplicable under the particular facts of this matter. Brown emphasizes that there is no evidence that Contractors provided any warning to Oil City that the stairs were dangerous, or that they reasonably expected Oil City to inform users that they were dangerous.

Additionally, Brown disputes PADC's contention that the lower court decision conflicts with the law in most other jurisdictions. He asserts there is, in fact, a split in authority, and he contends that "at least two other jurisdictions have followed an approach that holds contractors liable for patent or known dangerous conditions." *Id.* at 33 (discussing *Totten* and *McFadden, supra* note 12). Furthermore, Brown contends that a "significant number" of the cases cited by PADC "find that the possessor/employer's knowledge or discovery of the defect constitutes an intervening cause that relieves the contractor of liability" and, thus, are inconsistent with Pennsylvania law, as our law requires that "the actions of another tortfeasor to not only be intervening but so extraordinary as to be unforeseeable and, thus, superseding in order to relieve the original tortfeasor from liability." *Id.* at 35-36.

[14] The Pennsylvania Association for Justice ("PAJ") filed an *amicus* brief on behalf of Brown. PAJ aligns with Brown's argument that the Commonwealth Court correctly construed comment c to Section 385, and that such a construction is consistent with *Prost*. Addressing Contractors' contention that the lower court decision rewards property owners for doing nothing, PAJ asserts that their argument "misses the point," which is "that Section 385, as applied by this Court in *Prost*, is intended to assure the *injured victim* the opportunity to recover damages from either the contractor who created the hazard, or the possessor of property on which the hazard existed. No reward is bestowed on the property owner. To the contrary, a contractor may seek contribution from other tortfeasors if it pays more than its fair share of the liability." PAJ's Brief at 10 (emphasis original). PAJ buttresses this contention by highlighting the observation of the New Jersey Supreme Court that relieving a contractor of liability in such circumstances is "somewhat strange and illogical in thus terminating the possibility of liability of the party basically at fault." *Id.* (quoting *Totten*, 245 A.2d at 6). PAJ avers that the *Totten* court advocated a "sounder approach," which is to treat the possessor's inaction as "simply add[ing] him as another possible tortfeasor." *Id.* at 11. PAJ points out this approach was taken by the Commonwealth Court in the instant matter and in *Gilbert.*

### III. Analysis

This case involves the construction and application of provisions of the Restatement (Second) of Torts, matters of a purely legal nature; accordingly, our review is both plenary in nature and conducted *de novo*. *Gresik II*, 33 A.3d at 599. Furthermore, we remind that an appellate court may reverse a trial court's entry of summary judgment only if it finds that the trial court erred in concluding both that the matter presented no genuine issue as to any material fact, and that the moving party was entitled to the entry of summary judgment as a matter of law. *Feleccia v. Lackawanna College*, 215 A.3d 3, 10-11 (Pa. 2019). When conducting this review, we examine the factual record of the case in a light most favorable to the non-moving party. *Id.*

As set forth previously, Section 385 provides:

> One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor, under the same rules as those determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others.

---

Further, PAJ contends that the Superior Court's conclusion in *Gresik I* is based on a misreading of comment c to Section 385. PAJ offers that the plain language of comment c confirms that liability to the property owner is imposed on a contractor "who turns over the land with knowledge that his work has made it dangerous in a manner unlikely to be discovered by the possessor." *Id.* at 14 (quoting Section 385, cmt. c)) (emphasis omitted). But, PAJ contends that the *Gresik I* court took the meaning of the phrase "unlikely to be discovered" out of its proper context by finding that it created a "patent-latent distinction." *Id.* at 13. PAJ suggests this construction disregards the fact that comment c is focused not on the nature of the harm, but on the "temporality of the contractor's knowledge–at the time it turns over possession." *Id.* at 16. Accordingly, "the question is thus whether it was foreseeable *at that time* that the defective condition would likely go undiscovered? . . . [I]t is of no moment whether the property owner eventually learns of the defective condition after taking possession of the property from the contractor . . . ." *Id.* at 16 (emphasis added).

Restatement (Second) of Torts § 385. Further, comment c to Section 385 states:

> A manufacturer of a chattel who puts it upon the market knowing it to be dangerous and having no reason to expect that those who use it will realize its actual condition is liable for physical harm caused by its use (see § 394). As the liability of a servant or an independent contractor who erects a structure upon land or otherwise changes its physical condition is determined by the same rules as those which determine the liability of a manufacturer of a chattel, it follows that such a servant or contractor who turns over the land with knowledge that his work has made it dangerous in a manner unlikely to be discovered by the possessor is subject to liability both to the possessor, and to those who come upon the land with the consent of the possessor or who are likely to be in its vicinity.

Restatement (Second) of Torts § 385, cmt. c.

As we have discussed *supra*, the Superior Court in *Gresik I* held that, under Section 385 and comment c thereto, an out-of-possession contractor has no liability to a third person for harm resulting from a dangerous condition created by the contractor unless it is of a type "unlikely to be discovered by the possessor or those who come upon the land with the possessor's consent." *Gresik I*, 989 A.2d at 351. As our Court observed in *Gresik II*, albeit in *dicta*, the Superior Court's interpretation is "not obvious from Section 385's plain text." *Gresik II*, 33 A.3d at 600.

Moreover, the Superior Court's interpretation of Section 385 is not obliged by the plain text of comment c either. Indeed, as demonstrated by the reasoning of the Commonwealth Court in *Gilbert*, and again by that court below, the text of comment c is susceptible to another plausible interpretation — namely, that it serves to *expand* the class of third persons to whom an out-of-possession contractor is liable to the possessor of the property, if the dangerous condition is not likely to be discovered, *i.e.*, if it is "latent."

Notwithstanding, it must be emphasized that comment c does not exist in a vacuum. That is to say, it is not a stand-alone provision; rather, like all such comments, it serves as an explanatory and interpretative aid,[15] and thus must be read consistent with the text and underlying purposes for which Section 385 was adopted as part of our common law. *See Coyle by Coyle v. Richardson-Merrell, Inc.*, 584 A.2d 1383, 1385 (Pa. 1991) ("[W]here this Court has 'adopted' a section of the Restatement as the law of Pennsylvania, the language is not to be considered controlling in the manner of a statute. Such precepts, though they may govern large numbers of cases, are nothing other than common law pronouncements by the courts; their validity depends solely on the reasoning that supports them."); *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 353-54 (Pa. 2014) ("Consistent with its adjudicative rather than policy-making role, the Court has 'adopted' or deemed sections of a restatement a proper statement of Pennsylvania law if the cause of action and its contours are consistent with the nature of the tort and Pennsylvania's traditional common law formulation.").

Consequently, we must ascertain which of the competing interpretations of Section 385 – the Commonwealth Court's determination that an out-of-possession contractor is liable to third parties for all defects created by his work, whether patent or latent, or the Superior Court's view that the contractor may be held liable only for a latent defect – best aligns with the language of Section 385, which we have adopted in its entirety, including those sections that Section 385 explicitly incorporates – Sections 394-398, and 403-404. Likewise, we must determine which interpretation is consistent with the policy

---

[15]     *See* American Law Institute, *Anatomy of a Restatement*, *available at* https://www.ali.org/about-ali/story-line/.

considerations that were the impetus for our Court's adoption of Section 385 and its predecessor, Section 385 of the First Restatement: specifically, to ensure that a contractor is held accountable for any foreseeable injury that is caused by his lack of due care in performing the work that he was entrusted to perform. *See Prost*, 187 A.2d at 274-75.

We begin this analysis by briefly recounting the evolution and integration of the animating principles embodied in Section 385. It was once the rule in this Commonwealth that a contractor's liability for harm caused by his work was limited to those individuals with whom the contractor was in "privity of contract" – that is, to the party or parties with whom the contractors had entered into an agreement to perform the work. *See, e.g.*, *Curtain v. Somerset*, 21 A. 244 (Pa. 1891) (holding that contractor who built porch for a hotel was not liable to a third person standing on the porch who was injured when it collapsed, because the builder had completed his work on the porch and delivered it to the owner, but had no contractual relationship with the injured person). However, our Court repudiated this privity requirement following Judge Cardozo's watershed opinion in *MacPherson v. Buick Motor Company*, 217 N.Y. 382 (1916). In *MacPherson*, Judge Cardozo held that a manufacturer of defective chattels could be held liable for injuries caused by a defect in the chattel, notwithstanding the lack of a contractual relationship between the injured individual and the manufacturer. Judge Cardozo recognized that a manufacturer of a chattel had a duty to make it carefully, so as to "safeguard life and limb," and that this duty was owed not just to the immediate purchaser, but to all those whom it was reasonably foreseeable could be harmed by its use. *Id.* at 390.

Thereafter, relying on *MacPherson*, this Court in *Foley v. Pittsburgh-DesMoines Co.*, 68 A.2d 517 (Pa. 1949), explicitly recognized a duty of care on the part of a contractor not only to the possessor of land who employs him to perform work thereon, but to all other persons who will be affected by the performance of that work, even after the contractor has completed it. We reasoned:

> The principle inherent in the *MacPherson* . . . case and those that have followed it is that one who manufactures and delivers any article or structure with the knowledge that it will be subjected to use by others, must, for the protection of human life and property, use proper care to make it reasonably safe for such users and for those who may come into its vicinity; certainly the application of that principle cannot be made to depend upon the merely technical distinction between a chattel and a structure built upon the land.

*Id.* at 533. We observed that the tenets of *MacPherson* were embodied in Section 385 of the First Restatement, which specifically dictated that a contractor's liability was to be determined by the same rules as those establishing the liability of a manufacturer of chattels for the use of others, found in Sections 394-398 and 403-404 of the First Restatement. *Id.*; *accord Krisovich v. Booth*, 121 A.2d 890, 892 (Pa. Super. 1956).

Under the Second Restatement, comment a to Section 385 provides that these same rules continue to govern liability under Section 385:

> The rules determining the liability as one who as manufacturer or independent contractor makes a chattel for the use of others, are stated in §§ 394-398, and §§ 403 and 404.

Restatement (Second) of Torts § 385, cmt. a.[16] Therefore, to properly interpret Section 385, we must examine whether these rules contemplate that a possessor of land's

---

[16] These sections are entitled: § 394, "Chattel Known to be Dangerous"; § 395, "Negligent Manufacture of Chattel Dangerous Unless Carefully Made"; § 396, "Effect of Third

knowledge of a dangerous condition caused by a contractor is relevant in determining the contractor's liability to third parties.

Sections 403 and 404 of the Second Restatement referenced in Section 385 provide an overarching framework which establishes the situations under which a contractor who repairs a chattel on behalf of another will be held liable to a third person for a dangerous condition created by the repair, after yielding possession of the repaired chattel back to the one who employed him. Section 403 states:

> One who as an independent contractor makes, rebuilds, or repairs a chattel for another and turns it over to the other, knowing or having reason to know that his work has made it dangerous for the use for which it is turned over, is subject to the same liability as if he supplied the chattel.

*Id.* § 403. This section thus conditions the liability of the contractor on his awareness of the dangerous condition of the chattel after his work had been completed, and imposes liability when he knew, or had reason to know, that his repair efforts caused it to become dangerous for its intended use.

Section 404 of the Second Restatement provides:

> One who as an independent contractor negligently makes, rebuilds, or repairs a chattel for another is subject to the same liability as that imposed upon negligent manufacturers of chattels.

*Id.* § 404. This section renders a contractor liable to a third person if he negligently repairs the chattel – that is to say, failed to exercise due care in performing the repair work. Section 403 and Section 404, in turn, incorporate other Restatement sections where the

---

Person's Duty to Inspect"; § 397, "Chattel Made Under Secret Formula"; § 398, "Chattel Made Under Dangerous Plan or Design"; § 403, "Chattel Known to be Dangerous"; and § 404, "Negligence in Making, Rebuilding, or Repairing Chattel."

contractor's liability is to be determined based, respectively, on its knowledge of a dangerous condition it created, or its negligence in creating it.

Section 403 imposes liability on a contractor when he knows or has reason to know of the dangerous condition of the chattel by utilizing the Second Restatement's rules for establishing the liability of a supplier of a chattel in Sections 388 to 390. *See id.* § 394(a) ("[G]eneral liabilities which are common to all suppliers of chattels for the use of others . . . are stated in §§ 388-390."). Of these three sections, we find Sections 388 and 389 to be particularly instructive.[17]

Section 388, entitled "Chattel Known to be Dangerous for Intended Use," provides:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> > (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
> >
> > (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
> >
> > (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*Id.* § 388. Section 389, entitled "Chattel Unlikely to be Made Safe for Use" provides:

> One who supplies directly or through a third person a chattel for another's use, knowing or having reason to know that the chattel is unlikely to be made reasonably safe before being

---

[17] Section 390 of the Second Restatement applies only when a chattel is supplied to an individual who is incompetent "because of his youth, inexperience, or otherwise." Restatement (Second) of Torts § 390.

> put to a use which the supplier should expect it to be put, is subject to liability for physical harm caused by such use to those whom the supplier should expect to use the chattel or to be endangered by its probable use, and who are ignorant of the dangerous character of the chattel or whose knowledge thereof does not make them contributorily negligent, although the supplier has informed the other for whose use the chattel is supplied of its dangerous character.

*Id.* § 389.

We discern nothing in the plain text of these provisions which exempts an out-of-possession contractor from liability when it makes a repair to a chattel that it reasonably should foresee would render it dangerous to a third party who uses it, even when its dangerous condition is obvious. Section 388(b) does impose a duty on a contractor to inform a third-party user of a dangerous condition when the contractor "has no reason to believe" the third party will realize the dangerous condition which the contractor created. *Id.* § 388(b). It, thus, seemingly applies in situations where the contractor has, through his work, created a *non-obvious* defect in a chattel and, in those circumstances, imposes on the contractor a duty to inform its user of the defect. However, this language does not purport to relieve a contractor of liability to another person if the defect in the chattel is obvious. It simply does not address a contractor's liability for such defects under those circumstances.

Section 389 governs situations in which a contractor has created a chattel of a dangerous character and the extent of the danger is not readily apparent, but, thereafter, warns the user of its true character. This section specifies that such a warning is insufficient to relieve the contractor of liability. As with Section 388, there is nothing in the language of Section 389 purporting to relieve a contractor of liability where the chattel's

defect is obvious; like Section 388, it does not address a contractor's liability for such defects.[18]

Section 404 of the Second Restatement – governing the liability of a contractor for *negligently* creating a defective condition in a chattel it repaired – incorporates the rules for establishing the negligence of a manufacturer of chattels which are found in Sections 394 through 398 of the Second Restatement.

Section 394 states, "[t]he manufacturer of a chattel which he knows or has reason to know to be, or to be likely to be, dangerous for use is subject to the liability of a supplier of chattels with such knowledge." Restatement of Torts (Second), § 394. As discussed

---

[18] The dissent asserts that Section 388(b) and the excerpted language from Section 389 – *i.e.*, discussing users "who are ignorant of the dangerous character of the chattel or whose knowledge thereof does not make them contributorily negligent" – should be read as making "clear that latency of the dangerous condition is a third predicate condition to imposing liability outside of the privity relationships bypassed by the reasoning in *MacPherson*." Dissenting Opinion (Mundy, J.) at 4. Respectfully, we disagree, inasmuch as we interpret these provisions as establishing the conditions for liability only in situations where the defect is latent, which, as the dissent concedes, the defect at issue here was not. Due to their narrow scope, as indicated above, these sections do not establish, nor do they purport to restrict, the liability of a supplier in situations where the defect is patent. Indeed, the language of Section 388(c) referring to the requirement that the supplier of a chattel must have failed to exercise reasonable care to inform a user of the chattel's dangerous condition, and the language of Section 389 indicating that the act of informing the user of a chattel of its dangerous condition does not relieve the supplier of liability, buttresses our conclusion that these sections do not govern patent defects. A duty to inform, or the act of informing, the user of a chattel's dangerous condition presupposes that such a dangerous condition is hidden and not readily discernible to the user. Accordingly, given the facial inapplicability of these sections to patent defects, we do not find they establish the preconditions to find a contractor liable for creating an obviously defective condition.

Further, as Brown argues, and as the record in this matter supports, the issue of the adequacy of warnings or other information provided to users of a defective chattel is not at issue herein, as "there is simply no evidence at all in the present case that the Appellants, themselves, provided any warning to the City that the stairs they installed constituted a dangerous condition to users and that they reasonably expected the City to provide such warnings to users of the stairs." Appellee's Brief at 32.

above, the rules establishing the liability of a supplier of chattels are set forth in Sections 388-390 of the Second Restatement, and, as we have established in that discussion, do not exempt a contractor from liability to others for creating an obviously dangerous condition.

Section 395, which, as comment a to that section details, is explicitly derived from the holding in *MacPherson*, *supra,* plainly delineates the liability of a manufacturer of a chattel for conducting its manufacturing activity in a negligent fashion:

> A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing physical harm to those who use it for a purpose for which the manufacturer should expect it to be used and to those whom he should expect to be endangered by its probable use, is subject to liability for physical harm caused to them by its lawful use in a manner and for a purpose for which it is supplied.

*Id.* § 395. Significantly, neither this section, nor the *MacPherson* decision on which it is based, limits a manufacturer's liability to only chattels with latent defects. To the contrary, liability for the physical harm inflicted on third persons caused by a defective chattel is imposed on its manufacturer in *all* instances where the manufacturer fails to exercise reasonable care in creating the chattel, and the chattel is used as intended. The character of the defect in the chattel – be it latent or patent – is therefore irrelevant. Consequently, as a contractor who repairs a chattel on land is treated identically to such a manufacturer for purposes of Section 385, Section 395 supports the conclusion that a

contractor's liability is likewise not dependent on the latent or patent nature of the defective condition.[19]

_____

[19] The dissent posits that the principles set forth in Section 395 and *MacPherson* are inapplicable because "[n]owhere in the case below did any party rely on the inherent dangerousness of the type of construction at issue," and, in the dissent's view, Section 395 and *MacPherson* "did not impose foreseeability of injury where the dangerous condition was readily apparent, and any efforts or obligations of mitigation or avoidance of that danger was in the hands of others." Dissenting Opinion (Mundy, J.) at 6-7. In the dissent's view, "it is the latency of the dangerous condition that contributes to the foreseeability of harm to third parties." *Id.* at 8. Respectfully, we must disagree.

Section 395 establishes that it is the builder's breach of his duty of care in manufacturing or constructing a defective chattel and the foreseeability of harm to others which results from the dangers created by the breach of that duty, alone, which results in the imposition of liability. *See* Restatement (Second) of Torts § 395, cmt. a (explaining that *MacPherson* has gained universal acceptance by American courts, and is now understood to involve "merely the ordinary duty of reasonable care imposed upon the manufacturer, as to any product which he can reasonably expect to be dangerous if he is negligent in its manufacture or sale."); cmt. b (explaining that the justification for the rule in Section 395 rests, in part, "upon the foreseeability of harm if proper care is not used"); cmt. d ("In order that the manufacturer shall be subject to liability under the rule stated in this Section, it is not necessary that the chattel be 'inherently dangerous,' in the sense of involving any degree of risk of harm to those who use it even if it is properly made. It is enough that the chattel, if not carefully made, will involve such a risk of harm. It is not necessary that the risk be a great one, or that it be a risk of death or serious bodily harm."). Contrary to the dissent, we consider these principles to be implicated by the case at bar given that Brown specifically alleged in his complaint that Contractors "breached their duty to exercise reasonable care in the performance [of] their contractual obligations so as to not injure third parties, such as Kathryn Brown," by, *inter alia* "[f]ailing to properly reconstruct the front steps of the [library] in a safe and reasonable manner," and "[f]ailing to reconstruct the steps in a reasonable manner such that they would not unreasonably degrade." Brown's Amended Complaint, 5/25/17, at ¶¶ 52, 59; *see supra* pages 9-10.

Further, as our Court has emphasized, the *MacPherson* rule, as applied to independent contractors who build a chattel for the use of others, embodies the maxim that "for any injury resulting from any person's lack of elementary forethought, the law holds that person accountable. A normal human being is held to foresee those injuries which are the consequence of his acts or omission or commission which he, as a reasonable human being, should have foreseen." *Bisson v. John B. Kelly*, 170 A. 139, 143 (Pa. 1934). Under these tenets, it does not matter whether a builder negligently creates a chattel whose defects are hidden, or are plainly visible: in either circumstance the builder has breached his duty of care and is liable to all users who he could reasonably foresee would be injured by the existence of the defects. A builder's liability arising from his negligent construction of a defective chattel is not excused merely because of the

Section 396 provides support for this conclusion as well.  This section provides:

> A manufacturer of a chattel is subject to liability under the rules stated in §§ 394 and 395 although the dangerous character or condition of the chattel is discoverable by an inspection which the seller or any other person is under a duty to the person injured to make.

*Id.* § 396.  Under this section, a manufacturer of a dangerous chattel is liable for harm caused to a third person, even when another person has a duty to inspect the chattel. Hence, as pertinent to a contractor's liability under Section 385, even in situations where a possessor of land has a duty to inspect a contractor's repair work, once the work is completed and returned to the possessor, and a dangerous condition created by the work is apparent, *i.e.*, discoverable, the contractor is not relieved of liability for creating that condition.

Under Section 397, entitled "Chattel Made Under Secret Formula," which is applicable in situations where the creation of a chattel is done under a secret process, or one that is not likely to be understood by the user of the chattel, the manufacturer is liable for all physical harm caused both to the user and, more broadly, to all persons whom the manufacturer "should expect to be endangered by its probable use by his failure to exercise reasonable care to adopt such a formula and to bring to the knowledge of those who are to use the chattel such directions as will make it reasonably safe for the use for which it [is] supplied."  *Id.* § 397.  Notably, it does not matter for purposes of this section whether the danger posed by the manufactured chattel is patent or latent in nature.

---

happenstance that a user may notice the defect and attempt to avoid injury to his person, as it is the builder who bears the ultimate responsibility to construct a chattel in a manner which is not likely to inflict harm on its users.

Finally, Section 398, entitled "Chattel Made Under Dangerous Plan or Design," also supports the conclusion that an out-of-possession contractor's liability to third parties does not depend on the obviousness of the defective condition. This section provides:

> A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel or to be endangered by its probable use for physical harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design.

*Id.* § 398. Again, this section makes no distinction, for purposes of the imposition of liability, between a defective condition that is obvious or hidden. In either case, the manufacturer is liable if its plans or designs resulted in the creation of a dangerous condition. Thus, Section 398 likewise supports the conclusion that Section 385 does not condition an out-of-possession contractor's liability on the character of the defect – latent or patent – it has brought into being through his work.

In sum, then, the foregoing analysis of these cited provisions of the Second Restatement compels us to conclude that a contractor's liability under Section 385 does not hinge on whether the defective condition it caused is latent or patent. Rather, like the Commonwealth Court did below, and previously in *Gilbert*, we interpret Section 385 and comment c thereto as imposing potential liability on contractors to third persons for *all* defective conditions of structures on land which they are responsible for creating through their repair work. Similarly, we conclude that comment c serves only to clarify that the persons to whom a contractor is liable under Section 385 includes the possessor of land, when the dangerous condition is not readily discoverable by the possessor. Accordingly, we reject the contention that a contractor's liability to third persons is limited to only those

situations in which he has created a dangerous condition that is not readily apparent or obvious.

Indeed, we find that a contrary conclusion would disregard and undermine the bedrock legal principle and policy on which Section 385 rests: that a contractor has a social duty "to take thought and have a care lest his action result in injuries to others." *Prost*, 187 A.2d at 276 (quoting *Bisson*, 170 A. at 143). This social duty "the law recognizes and enforces, and for any injury resulting from any person's lack of elementary forethought, the law holds that person accountable." *Id.* Thus, as eloquently explained by Justice Musmanno in *Prost*:

> Where a builder creates a hazard which, without the need of a prophetic telescope, proclaims potential injury to the public, he may not plead immunity from liability for resulting damage on the basis that his responsibility ceased with the insertion of the last bolt and the driving of the final nail.

*Id.* at 277.

Finally, we reject Contractors' complaint that such a conclusion "rewards property owners for failing to inspect [their] property" and "shift[s] that burden upon contractors not in possession of the property." Contractors' Brief at 40. Our determination regarding a contractor's liability under Section 385 does not displace a possessor of land's responsibility to protect the public. A possessor of land, like a contractor, also has a social duty to invitees onto his or her land to "keep the premises in a reasonably safe condition." *Watkins v. Sharon Aerie No. 327 Fraternal Order of Eagles*, 223 A.2d 742, 743 (Pa. 1966). Our holding today does not alter a possessor of land's potential liability to third parties for injuries caused by a dangerous condition existing on the land, and, therefore, does not preclude the prospect of a possessor being found jointly liable with a contractor for the

harm a dangerous condition caused to third parties. *See Builders Supply Co. v. McCabe*, 77 A.2d 368, 371 (Pa. 1951) ("The universal rule is that when two or more contribute by their wrongdoing to the injury of another, the injured party may recover from all of them in a joint action or he may pursue any one of them and recover from him."). Rather, we agree with the New Jersey Supreme Court that inaction by the owner of property upon becoming aware of a dangerous condition created by a contractor's work arguably "adds him as another possible tortfeasor." *Totten,* 245 A.2d at 6. Indeed, as Brown highlights, the facts of the instant matter demonstrate this, given that Oil City was separately sued by Brown for its own negligence in, for example, failing to maintain or repair the stairs, or taking other actions such as warning users such as Kathryn Brown of their dangerous condition, *see* Brown's Amended Complaint, 5/25/17, at ¶¶ 40-45, and it settled that claim through its payment of $500,000.[20]

---

[20] The dissent notes that, in *Carrender v. Fitterer*, 469 A.2d 120 (Pa. 1983), we endorsed the principles set forth in Section 343A of the Restatement (Second) of Torts which limit the liability of possessors of land "for physical harm caused to [his invitees] by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Id.* at 123 (quoting Section 343A). We further explained therein that "[a] danger is deemed to be 'obvious' when 'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment. For a danger to be 'known,' it must 'not only be known to exist, but … also be recognized that it is dangerous and the probability and gravity of the threatened harm must be appreciated.'" *Id.* at 123-24 (quoting Section 343A) (alterations original and citations omitted). The dissent contends that our holding is "antithetical" to these principles of liability. Dissenting Opinion (Mundy, J.) at 8. We must respectfully disagree.

While, as we have established, Section 385 of the Restatement (Second) of Torts imposes liability on a builder of a chattel for a possessor of land to third parties for obvious defects, the principles of *Carrender* remain relevant factors to be considered by the finder of fact in its ultimate apportionment of liability. That is, evidence of whether the defective condition of the chattel and the risk of harm it creates are "apparent to and would be recognized by a reasonable man, in the position of a visitor, exercising normal perception, intelligence, and judgment," as well as the visitor's appreciation of the existence of the

## IV. Conclusion

Based on the foregoing discussion, we hold that a contractor who has created a dangerous condition through work performed for a possessor of land may be liable under Section 385 to all persons suffering injuries caused by the dangerous condition, even if that condition is obvious or apparent in nature.[21]  As the Commonwealth Court came to the same conclusion, we affirm.

Order affirmed.

Justices Donohue, Dougherty and Wecht join the opinion.

Justice Mundy files a dissenting opinion.

Justice Brobson did not participate in the consideration or decision of this matter.

---

defect and the "probability and gravity" of its threatened harm, *see Carrender*, 469 A.2d at 123-24, are relevant for the finder of fact to ascertain the degree of fault, if any, to be apportioned to the visitor for harm inflicted by an obvious defect.

[21]  In reaching this holding, we answer only the question presented to us:  whether an out-of-possession contractor may, as a matter of law, be held liable under Section 385 for patent defects that cause injury to third persons.  Thus, we express no opinion as to whether Contractors are, in fact, liable under the factual circumstances of this case.  We likewise express no opinion regarding whether Contractors have any other legal defenses against liability, as the facts surrounding the nature of the defect in the stairs, its dangerousness, and its perceptibility remain contested by the parties.  Such matters may be explored in the proceedings on remand ordered by the Commonwealth Court.